# United States Court of Appeals
## For the First Circuit

No. 11-1404

DANIEL GRAJALES ET AL.,

Plaintiffs, Appellants,

v.

PUERTO RICO PORTS AUTHORITY ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Eugenio W.A. Géigel-Simounet, with whom Géigel-Simounet Law Offices C.S.P. was on brief, for appellants.
José Vázquez García, with whom Maza & Green, P.S.C. was on brief, for appellee Puerto Rico Ports Authority.
Luis R. Román-Negrón, Acting Solicitor General, with whom Jeanette M. Collazo-Ortiz, Acting Deputy Solicitor General, Zaira Z. Girón-Anadón, Deputy Solicitor General, and Susana I. Peñagarícano-Brown, Assistant Solicitor General, were on brief, for individual appellees.

June 13, 2012

**SELYA, Circuit Judge.** This case requires us to revisit the plausibility threshold that a complaint must cross in order to survive a motion to dismiss. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). After careful consideration of a scumbled record, we reverse the judgment of dismissal and remand for further proceedings.

## I. BACKGROUND

We briefly rehearse the background of the case, reserving salient details for our discussion of the merits. Because this appeal follows the granting of a motion for judgment on the pleadings, we glean the facts from the operative pleading (in this instance, the second amended complaint). See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). For purposes of this appeal, we accept those facts as true.

At all times relevant hereto, plaintiff-appellant Daniel Grajales worked for the Puerto Rico Ports Authority (PRPA).[1] On June 19, 2006, Fernando Bonilla, the PRPA's executive director, named the plaintiff to a trust position within the PRPA.[2] At the

---

[1] Grajales's wife and their conjugal partnership also appear as plaintiffs and appellants. Since their claims are wholly derivative, we opt for simplicity and focus our ensuing discussion on Grajales qua plaintiff and appellant.

[2] In Puerto Rico, "career" positions are akin to civil service positions. "'Career' employees must be selected and terminated based on merit, not politics." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n.7 (1st Cir. 2010). By contrast, "trust" positions

-2-

time of his appointment, the Popular Democratic Party (PDP) held the reigns of power in Puerto Rico. In 2008, the plaintiff voluntarily resigned this post in order to accept a career position at the Luis Muñoz Marín International Airport in Carolina. Within a matter of months, he transferred to another career position as a security supervisor at the Aguadilla airport (a facility located in his hometown).

The PDP lost the general election held in November of 2008, and its main rival, the New Progressive Party (NPP), assumed office. In early 2009, the plaintiff began experiencing workplace harassment. Some of the most notable affronts included his banishment from the Aguadilla airport, his transfer to the Mercedita airport in Ponce (which was far from his home), the removal of his sidearm, a series of negative performance evaluations, and threats of suspension and termination. No legitimate reason supported any of these actions.

Dismayed by these events, the plaintiff sued the PRPA and six of his tormentors (defendants-appellees Alvaro Pilar-Vilagrán, Elmer Emeric, Carlos Travieso, Manuel Villazán Lig-Long, Gonzalo González-Santini, and Miguel Alcover). The centerpiece of his suit was a claim of political discrimination. This claim asserted in

do not enjoy comparable protections. Thus, employees who occupy positions of trust serve at the pleasure of the appointing authority and are subject to selection and dismissal on, inter alia, political grounds. See id.

substance that the individual defendants had engaged in a campaign of harassment against him because of his ties to the PDP.

We fast-forward past a melange of discovery and other pretrial proceedings to the point at which the plaintiff filed his second amended complaint. After filing their answers, the defendants moved for judgment on the pleadings, arguing that the complaint failed, in the words of the Supreme Court, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). The district judge referred the motion to a magistrate judge, see 28 U.S.C. § 636(b)(1)(B), who recommended granting it. On de novo review, the district judge accepted the recommendation and dismissed all of the plaintiff's federal claims with prejudice. For ease in exposition, we do not distinguish between the two judicial officers but take an institutional view and refer to the decision as that of the district court.

The district court concluded that the second amended complaint failed to cross the plausibility threshold because it did not allege sufficient facts to support a prima facie case of political discrimination. Grajales v. P. R. Ports Auth., No. 09-2075, 2011 WL 1742972, at *2-6 (D.P.R. Jan. 25, 2011). Specifically, the complaint failed to allege facts demonstrating that the defendants knew of the plaintiff's political affiliation. Id. at *2. Moreover, the plaintiff failed to demonstrate a "causal

-4-

connection between the challenged employment action . . . and any conduct protected by the First Amendment that would have amounted to political discrimination." Id. at *3.

Elaborating further, the court noted that the only indication of political animus was the plaintiff's conclusory statement to that effect. See id. at *6. In the court's estimation, the facts alleged reflected no political undercurrents. See id. This timely appeal followed.

## II. ANALYSIS

When, as now, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Remexcel Manag'l Consultants, Inc. v. Arlequín, 583 F.3d 45, 49 n.3 (1st Cir. 2009); Gray v. Evercore Restruc. L.L.C., 544 F.3d 320, 324 (1st Cir. 2008); see also Fed. R. Civ. P. 12(h)(2). It follows that the grant or denial of such a motion engenders de novo review. SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). In conducting this review, we accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor. Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "We may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts

-5-

susceptible to judicial notice."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

It is a truism that a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plausibility determinations must be evaluated in light of this truism.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 8 (1st Cir. 2011). In order "[t]o survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face."  Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir. 2012) (alterations and internal quotation marks omitted).

A determination of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.  To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability. Id. at 678.

The plausibility standard implicates a two-step pavane. See id. at 678-79.  First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P. R., ___ F.3d ___, ___ (1st Cir. 2012) [No. 11-1589, slip op. at 7].  Second, the court must determine

-6-

whether the factual content permits "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotation marks omitted); see Sepúlveda-Villarini v. Dep't of Educ. of P. R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.) ("The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

Before us, the plaintiff focuses single-mindedly on the viability of his political discrimination claim under 42 U.S.C. § 1983.[3] He marshals both procedural and substantive attacks on the district court's rejection of that claim. Procedurally, he contends that the district court abused its discretion when it entertained a Rule 12(c) motion for judgment on the pleadings, based on a supposed failure to state a plausible claim, after nine months of discovery. Substantively, he contends that, in all events, his second amended complaint states a plausible political discrimination claim.

An understanding of the travel of the case is needed to put the plaintiff's procedural contention into perspective. The plaintiff commenced suit on October 16, 2009. The defendants moved

---

[3] Although the district court dismissed with prejudice all of the plaintiff's federal claims, the plaintiff has presented developed argumentation only on this one claim. His other federal claims are, therefore, deemed abandoned, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and may not be resurrected on remand.

to dismiss under Rule 12(b)(6). The district court did not rule on the motion but, rather, allowed the plaintiff to file an amended complaint. It then denied the defendants' Rule 12(b)(6) motion as "moot," and the defendants proceeded to answer the amended complaint.

On April 22, 2010, the district court granted the plaintiff leave to amend yet again. Although the proposed second amended complaint (which was nearly identical to its predecessor) was attached to the motion for leave to amend, it was not formally docketed until September 27, 2010. The defendants served their answers in October and, on December 9, the individual defendants filed a Rule 12(c) motion. By then, both the deadline for filing a motion for judgment on the pleadings (May 7, 2010) and the discovery closure date (November 18, 2010) had passed.[4] The court below nonetheless entertained the motion and granted it.

Under ordinary circumstances, a court may measure the plausibility of a complaint by means of a motion for judgment on the pleadings. See, e.g., Elena v. Municipality of San Juan, ___ F.3d ___, ___ (1st Cir. 2012) [No. 10-1849, slip op. at 8-11 & n.6]; Estate of Bennett v. Wainwright, 548 F.3d 155, 162-64 (1st Cir. 2008); Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29-31 (1st

---

[4] The deadline for filing a motion for judgment on the pleadings was established by the court in its initial scheduling order. See Fed. R. Civ. P. 16(b)(1). That order also set a discovery closure date, which the court subsequently extended to November 18, 2010. See Fed. R. Civ. P. 16(b)(4).

Cir. 2008). We have not, however, spoken to the question of whether it is appropriate to apply the plausibility standard after substantial pretrial discovery has taken place. An obvious anomaly arises in such a situation because a court attempting to determine whether a complaint should be dismissed for implausibility must decide, on the basis of the complaint alone, if the complaint lacks enough factual content to allow a "reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This is, by its nature, a threshold inquiry, and logic strongly suggests that it occur prior to discovery. Ignoring the entire panoply of facts developed during discovery makes little sense.

An artificial evaluation of this sort seems especially awkward because one of the main goals of the plausibility standard is the avoidance of unnecessary discovery. See Twombly, 550 U.S. at 556-58; Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011). Applying the plausibility standard to a complaint after discovery is nearly complete would defeat this core purpose. Cf. Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010) (expressing concern about entertaining a Rule 12(c) motion to test the plausibility of a complaint following a preliminary injunction hearing that generated an extensive record). Thus, while district courts enjoy broad discretion in managing their dockets, we think that, once the parties have invested substantial resources in

-9-

discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement.

Here, however, we need not decide the difficult question of whether the district court's decision to entertain the defendants' Rule 12(c) motion after nine months of pretrial discovery was an abuse of discretion. As we explain below, this case can readily be resolved on the merits of the plausibility claim. We turn, therefore, to the plaintiff's substantive contention.

The PRPA is "a public corporation and government instrumentality of the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 23, § 333(a). Non-policymaking public employees are protected by the First Amendment from adverse employment actions based on political affiliation. See Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

For claims of political discrimination by state actors — and Puerto Rico is, for this purpose, the functional equivalent of a state, Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011) — section 1983 is the customary vehicle through which relief is sought. See Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir. 2007). "There are two essential elements of an action under section 1983: (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a

denial of rights secured by the Constitution or laws of the United States."  Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995) (internal quotation marks omitted).  Within this rubric, an actionable claim of political discrimination must encompass four elements: that the protagonists are members of opposing political parties; that the defendant knows of the plaintiff's political affiliation; that an adverse employment action occurred; and that political affiliation was a substantial or motivating factor behind the adverse action.  See Ocasio-Hernández, 640 F.3d at 13.  In the case at hand, we look to these four elements as a backdrop for determining the plausibility of the claim.  See, e.g., id. at 13-19.

A formal adverse action (such as a discharge or the denial of a promotion) is not a sine qua non for a claim of political discrimination.  See Rojas-Velázquez v. Figueroa-Sancha, ___ F.3d ___, ___ (1st Cir. 2012) [No. 11-1447, slip op. at 8].  Political discrimination claims may be based on harassment as long as the "acts are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party."  Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008) (internal quotation marks omitted).

We add a caveat.  As a general matter, liability for public officials under section 1983 arises only if "a plaintiff can establish that his or her constitutional injury resulted from the

direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Ocasio-Hernández, 640 F.3d at 16 (internal quotation marks omitted). Moreover, supervisory liability under section 1983 cannot arise solely on the basis of respondeat superior. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011). Such liability requires that the supervisor's conduct (whether action or inaction) constitutes "supervisory encouragement, condonation or acquiescence[,] or gross negligence of the supervisor amounting to deliberate indifference." Welch, 542 F.3d at 937 (alterations, internal quotation marks, and emphasis omitted). Finally, the case law requires a separate assessment of the potential liability of each of the defendants. Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

With these principles in place, we first address the district court's suggestion that the second amended complaint does not sufficiently show that the protagonists belonged to different political parties. The second amended complaint alleges that each of the defendants "belong[s] to a different [political] party than [the plaintiff]." This is a specific factual allegation which, in itself, is adequate for pleading purposes. In connection with a threshold plausibility inquiry, a high degree of factual specificity is not required. See Twombly, 550 U.S. at 570.

-12-

We previously have upheld the sufficiency of an allegation "that the defendants all belong to the NPP." Ocasio-Hernández, 640 F.3d at 13 (alterations and internal quotation marks omitted). The relevant allegation in the instant case is not materially different.

It is equally plausible to infer that the defendants, all of whom work for the PRPA, had knowledge of the plaintiff's political allegiance. While the second amended complaint contains only a conclusory averment of knowledge, we believe that, for pleading purposes, knowledge is inferable from other allegations. The complaint alleges that, in 2006, the plaintiff was designated as the PRPA's interagency coordinator for emergency management. This is, as the defendants conceded at oral argument, a trust position. After serving in this highly visible trust position for well over a year, the plaintiff — with a general election on the horizon — arranged to be transferred into a career position at the Aguadilla airport.

For purposes of a plausibility analysis, the allegations of a complaint must be assessed in light of "judicial experience and common sense." Iqbal, 556 U.S. at 679. Bonilla, in addition to being the executive director of the PRPA and the appointing authority for the plaintiff's trust position, was a high-ranking member (Secretary of State) in the PDP administration. It is no secret that political leaders most often choose political allies to

-13-

fill important policymaking positions.  When examining the factual allegations of the second amended complaint in context, we think that a plausible inference can be drawn that the plaintiff, who was named to a prestigious trust position by a PDP hierarch under a PDP administration, was a member of the PDP and that the defendants knew as much.  Nothing about the plausibility standard requires a court to blind itself to what is obvious.

This leads to the question of whether the conduct described in the complaint comprises an adverse employment action. The second amended complaint names the PRPA and six individual defendants.  We summarize the relevant factual allegations against each individual defendant.  See Rogan, 175 F.3d at 77.  We do not make a similar analysis with respect to the PRPA because the defendants have not made any meaningful attempt to distinguish the PRPA's liability, at least for equitable relief, from the putative liability of the individual defendants.  Cf. Domegan v. Fair, 859 F.2d 1059, 1065 (1st Cir. 1988) (declining to engage in such an analysis when the defendants made "[n]o meaningful attempt at individuation").

- **Alvaro Pilar-Vilagrán (Pilar).**

Pilar, an appointee of the NPP regime, became the executive director of the PRPA following the 2008 election.  On two separate occasions in early 2009, the plaintiff notified Pilar of "political persecution, discrimination[,] and harassment by other

-14-

employees of the PRPA." Pilar referred the complaints to a subordinate for investigation but did not follow up, and no investigation took place. For no apparent reason, Pilar later banished the plaintiff from the Aguadilla airport and transferred him involuntarily to an airport approximately ninety minutes from his home. This was done without any provision to reimburse the plaintiff for the additional travel involved.

- **Elmer Emeric.**

Emeric served as the PRPA's director of general security. On two occasions, the plaintiff notified Emeric of the rampant harassment that was taking place. Emeric dismissed these complaints as "unimportant" and never investigated them. In addition, Emeric insisted that the plaintiff clock-in at the distant Mercedita airport instead of at the conveniently located Aguadilla airport, thus adding roughly ninety minutes to the plaintiff's work day. Other PRPA employees who worked at a considerable remove from their homes were allowed to clock-in at airports nearer to where they lived.

- **Carlos Travieso.**

Travieso, who was the interim security supervisor at the Aguadilla airport, assumed the plaintiff's position after the plaintiff was transferred. Prior to the transfer, he consistently opposed the plaintiff's continuation as security supervisor, charging that the plaintiff had received the position through

-15-

political patronage.   As part of his campaign, Travieso falsely reported to the PRPA's director of general security that a private citizen had videotaped the plaintiff driving recklessly while on official business.   In reality, Travieso himself had done the videotaping and no private citizen had complained.  When requested, Travieso refused to hand over the tape that he had made.

- **Manuel Villazán Lig-Long (Villazán).**

Villazán was the manager of general security at the PRPA. He colluded with Travieso by falsely claiming that a private citizen had reported and recorded the plaintiff's reckless driving. Around this same time, Villazán urged that Travieso replace the plaintiff as security supervisor at the Aguadilla airport. Villazán also directed an underling to file false charges against the plaintiff for offensive behavior.   The charges were later dismissed for lack of evidence.

- **Gonzalo González-Santini (González).**

González manages the Aguadilla airport.   In that capacity, he encouraged Pilar both to investigate the plaintiff and to abolish the security office at the Aguadilla airport.  These actions clearly jeopardized the plaintiff's job.  Moreover, PRPA policy did not allow for the abolition of the Aguadilla airport's security office.

This was only the tip of the iceberg.   González undermined the plaintiff's authority as security supervisor,

falsely reported supposed wrongdoing by the plaintiff to the Office of Personnel and Management, engaged in verbal taunts, and tried to have the plaintiff's wife transferred from her job at the Aguadilla airport.

- **Miguel Alcover**.

Alcover was an internal security officer at the Aguadilla airport and, as such, worked under the plaintiff's supervision. His behavior toward the plaintiff was insubordinate, disrespectful, and hostile. He filed false charges against the plaintiff for supposedly offensive behavior. The charges were later dismissed. Alcover made other bogus accusations, such as an untrue statement that the plaintiff had used an official vehicle while on personal business.

Taking these allegations as true, we think that their combined effect, culminating in the plaintiff's involuntary transfer to a remote and inconvenient work station, qualifies as an adverse employment action. See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217-20 (1st Cir. 1989) (en banc). Fairly read, the second amended complaint alleges sufficient facts to hold each of the individual defendants liable for political discrimination. At the same time, the second amended complaint alleges sequential facts constituting a pattern of discrimination. All of the individual defendants actively contributed to this pattern, and the plaintiff's superiors (Pilar and Emeric)

deliberately ignored the plaintiff's repeated complaints about the harassment.

The remaining question is whether the second amended complaint alleges sufficient facts to support a reasonable inference that political affiliation was a substantial or motivating factor behind the adverse employment action. The complaint mentions just one occasion on which the plaintiff's political affiliation was openly discussed. This discussion was in connection with Travieso's accusation that the plaintiff had obtained his career position "as a political favor" prior to the change in administration.

This paucity of direct evidence is not fatal in the plausibility inquiry. "Smoking gun" proof of discrimination is rarely available, especially at the pleading stage. See, e.g., Ocasio-Hernández, 640 F.3d at 17. Nor is such proof necessary. When "a protean issue such as an actor's motive or intent" is at stake, telltale clues may be gathered from the circumstances surrounding the adverse employment action. See Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991). The plausibility threshold "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal conduct.'" Ocasio-Hernández, 640 F.3d at 17 (quoting Twombly, 550 U.S. at 556) (alteration omitted).

Viewing the pleaded facts in the light most hospitable to the plaintiff, the following picture emerges. In 2008, the plaintiff — who had an exemplary record of service within the PRPA — moved from a trust (policymaking) to a career (non-policymaking) position. Shortly after the change in administration wrought by the 2008 election, the plaintiff began experiencing significant harassment at the hands of persons loyal to an opposing political party (which controlled the new administration). This course of harassment consisted in large part of actions for which there was no legitimate explanation. The harassment culminated in unjustified disciplinary threats, disparate treatment, the loss of the plaintiff's right to carry a sidearm, his involuntary transfer to a remote work station, the elongation of his workday, and a denial of remuneration for the extra time and travel involved.

The scenario here is not unfamiliar. Similar claims of political discrimination in the public workplace following a change in administration appear to be increasingly common in the Commonwealth of Puerto Rico. See, e.g., Rodriguez-Sanchez v. Municipality of Santa Isabel, 658 F.3d 125, 130 (1st Cir. 2011); Negrón-Almeda v. Santiago, 528 F.3d 15, 18-20 (1st Cir. 2008). In this instance, the close temporal proximity between the regime change and the onset of pervasive cross-party harassment, coupled with the absence of any legitimate reason for much of the offending conduct, permits a plausible inference at the pleading stage that

-19-

political animus was a motivating factor behind the harassment. See Ocasio-Hernández, 640 F.3d at 17-18; cf. Geinosky v. City of Chicago, 675 F.3d 743, 746-50 (7th Cir. 2012) (explaining that allegations of a widespread pattern of negative conduct, perpetrated by officers belonging to a single police unit, met the plausibility threshold for equal protection and civil conspiracy claims under section 1983).

We hold, therefore, that the factual allegations in the second amended complaint, taken as true and considered as a whole, state a plausible section 1983 claim for political discrimination. We caution, however, that a favorable plausibility determination does not necessarily herald a likelihood of success at subsequent stages of the litigation. Factual allegations must be proven, evidence to the contrary must be factored into the mix, and the merits remain entirely open.

There is one loose end. On appeal, the individual defendants attempt to assert a defense of qualified immunity. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); Goyco de Maldonado v. Rivera, 849 F.2d 683, 684 (1st Cir. 1988). In the circumstances of this case, any consideration of such a defense at this time would be premature. The defendants may, of course, reassert this defense in the district court on a more fully developed record. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 n.15 (1st Cir. 2009).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we hold that the plaintiff's second amended complaint sets forth sufficient factual content to make out a plausible claim for relief.  Accordingly, we reverse the judgment of the district court on the plaintiff's political discrimination claim and remand for further proceedings consistent with this opinion.  The plaintiff's local-law claims, which the lower court implicitly dismissed without prejudice for want of supplemental jurisdiction, 28 U.S.C. § 1367(c), may be revisited on remand.

**Reversed and remanded.**