# United States Court of Appeals
## For the First Circuit

No. 12-2314

RANIAH FATHI ATIEH
AND FUAD FAROUQ ATIEH,

Plaintiffs, Appellants,

v.

DENIS RIORDAN ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Philip H. Mantis and Saher J. Macarius, with whom Audrey
Botros and Law Offices of Saher J. Macarius were on brief, for
appellants.
J. Max Weintraub, Senior Litigation Counsel, United States
Department of Justice, Civil Division, Office of Immigration
Litigation, with whom Stuart F. Delery, Acting Assistant Attorney
General, David J. Kline, Director, Office of Immigration
Litigation, and Colin A. Kisor, Deputy Director, Office of
Immigration Litigation, were on brief, for appellees.

June 24, 2013

**SELYA, Circuit Judge.** The infrastructure of the adjudicative process consists of rules, many of which are procedural. Not surprisingly, then, the due administration of justice typically requires both courts and litigants to give fastidious attention to procedural regularity. When parties lead a court down a path that ignores proper procedure, bad things often happen.

This case illustrates the point: the parties presented the matter to the district court in a posture inimical to that required by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, for judicial review of final agency decisions. The district court took the bait and decided the case as the parties had presented it. We vacate the resultant judgment and remand for further proceedings.

The relevant facts and travel of the case lend themselves to a succinct summary. Plaintiff-appellant Fuad Atieh is a Jordanian national. In 1992, he entered the United States on a six-month visitor's visa and overstayed. Roughly ten years later, United States Citizenship and Immigration Services (USCIS) awakened to Fuad's continued presence and placed him in removal proceedings.

While the removal proceedings were velivolant, Fuad — on January 23, 2004 — married his first cousin, Jamileh Khudari, a United States citizen. Shortly thereafter, Jamileh filed an I-130

visa petition to Fuad's behoof.[1]  In a matter of months, however, the couple separated, and Jamileh withdrew the petition.  On December 12, 2004 — less than a year after Fuad and Jamileh had wed — the separation ripened into a divorce.

The following summer, Fuad married his second wife, Raniah, who (like Jamileh) was a United States citizen.  She too filed an I-130 petition on Fuad's behalf.

On March 3, 2006, USCIS interviewed Fuad and Raniah in connection with the new I-130 petition.  The interviewer questioned Fuad about his earlier marriage.  Fuad explained that the marriage was arranged by the couple's parents and that he was never in love with Jamileh.  During the interview, Fuad reportedly stated that he and his parents had hoped that he would acquire lawful permanent resident status through Jamileh.

On May 8, 2006, USCIS issued a notice of intent to deny the I-130 petition pursuant to 8 U.S.C. § 1154(c), which authorizes such action if the designated beneficiary (here, Fuad) has previously entered into a marriage for the purpose of evading the immigration laws.  In response, the Atiehs submitted affidavits from Fuad, Jamileh, Fuad's parents, and Jamileh's parents, asserting that Fuad's first marriage was bona fide.  USCIS

---

[1] A United States citizen seeking an "immediate relative" visa for his or her spouse, parent, or child is required to file a Form I-130 Petition for Alien Relative with the Attorney General.  <u>See</u> 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1).

nonetheless denied the I-130 petition, finding that, on the totality of the record, Fuad had entered into a sham marriage with Jamileh to evade the immigration laws.

The Atiehs appealed, but the Board of Immigration Appeals (BIA) dismissed their appeal, thus affirming the denial of the I-130 petition. The BIA concluded that the Atiehs had failed to establish that Fuad's first marriage was bona fide. In reaching this conclusion, the BIA stressed both Fuad's statement that his parents had hoped that he would acquire lawful permanent resident status through Jamileh[2] and his pursuit of a romantic relationship with Raniah prior to his first marriage.

The Atiehs repaired to the district court and sued to set aside the BIA's decision.[3] The district court wisely held this suit in abeyance while Raniah pursued a renewed I-130 petition on Fuad's behalf before the agency.

In due course, USCIS denied the renewed petition, and the BIA again affirmed. This new round of administrative skirmishing led to the filing of an amended complaint in the district court.

_____

[2] The BIA's decision cites Fuad's "express statement at his interview that his parents had hoped he would acquire lawful permanent resident status through his cousin." This is a slight (but potentially significant) variance from USCIS's notice of denial, which cites Fuad's testimony that "we all hoped I could get my residence here through [Jamileh]."

[3] At the time that suit was commenced, a motion for reconsideration was apparently pending before the BIA (without the administrative record we cannot tell). In any event, that motion was subsequently denied.

The amended complaint does not distinguish between the two BIA decisions. We agree, however, with the district court that "the denial of the first [I-130] petition was effectively superseded by the denial of the second petition." Atieh v. Riordan, No. 09-10977, 2012 WL 4498909, at *1 (D. Mass. Oct. 2, 2012).

The defendants, government officials sued as such, moved to dismiss for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The district court allowed the motion, see Atieh, 2012 WL 4498909, at *5, and this timely appeal ensued.

Our analysis begins — and ends — with the irregular manner in which this case was handled in the court below. Although the amended complaint styles this case as an action for a declaratory judgment, see 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57, that description is inapt. As all parties acknowledged in their briefs and at oral argument, the district court's jurisdiction here arises under the judicial review provisions of the APA, 5 U.S.C. § 706. This means, of course, that judicial review of the agency's decision must proceed on the administrative record. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); Cousins v. Sec'y of the U.S. Dep't of Transp., 880 F.2d 603, 610 (1st Cir. 1989) (en banc).

This is a critical datum. The APA requires a reviewing court to set aside an agency decision when the administrative

-5-

record shows that the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  An agency decision fails to pass this test if the administrative record reveals that "the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." Assoc'd Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997); see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

In the case at hand, neither side purposed to file a copy of the administrative record with the district court.  Instead, the defendants sought dismissal on the basis of the plausibility standard limned by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Atiehs elected to meet fire with fire, resisting the motion on the ground that their amended complaint satisfied the plausibility standard.  The district court, following the parties' lead, examined the amended complaint for plausibility, found the Atiehs' allegations of arbitrary and capricious decisionmaking implausible, and dismissed their action.  See Atieh, 2012 WL 4498909, at *4-5.

We think that the parties led the court down a primrose path. The plausibility standard is a screening mechanism designed to weed out cases that do not warrant either discovery or trial. See, e.g., Grajales v. P.R. Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012). To this end, the plausibility standard asks whether the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

APA review, however, involves neither discovery nor trial. Thus, APA review presents no need for screening. It follows that the plausibility standard has no place in APA review.

This makes perfect sense. The focal point of APA review is the existing administrative record. See Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam). Allowing the allegations of a complaint to become the focal point of judicial review introduces an unnecessary and inevitably unproductive step into the process. The relevant inquiry is — and must remain — not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision. Cf. Mass. Dep't of Pub. Welfare v. Sec'y of Agric., 984 F.2d 514, 525 (1st Cir. 1993) (explaining, in summary judgment context, that "the real question is . . . whether the administrative record, now closed, reflects a sufficient dispute concerning the factual predicate on which [the agency] relied

. . . to support a finding that the agency acted arbitrarily or capriciously").

This paradigm dictates the outcome of the instant appeal. We hold that the plausibility standard does not apply to a complaint for judicial review of final agency action and that the district court therefore erred in invoking it.[4]

Nor can we say that the district court's methodologic error was harmless. For aught that appears, the parties neglected to file the administrative record with the district court (or, for that matter, with this court). Although the Atiehs submitted various materials as attachments to their complaint and as addenda to their appellate briefs, it would be sheer speculation to assume that these submissions collectively constitute the full administrative record. Indeed — even though the government argued to the district court that the record as a whole undercut the plausibility of the Atiehs' allegations — some portions of the administrative record are obviously lacking. For example, the materials on file do not contain any transcript or recording of the crucial March 3, 2006 visa petition interview, despite the fact

_____

[4] This does not mean, however, that Rule 12(b)(6) can never be in play in an APA appeal. Such a motion may be appropriate in certain circumstances. For example (and without limiting the generality of the foregoing), it is possible that such a motion might lie where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported). See, e.g., Zixiang Li v. Kerry, 710 F.3d 995, 1000-01 (9th Cir. 2013). The case at hand is not such a case.

that the parties and the district court cite statements purportedly made by Fuad during this interview.

In all events, a court should not be required to guess at whether or not it has the complete administrative record.  The customary practice is for the government to certify that the administrative record is complete, and for the parties to file it with the district court.  See United States v. Menendez, 48 F.3d 1401, 1409-10 (5th Cir. 1995) (reversing and remanding for failure of government to provide district court with a certified copy of the administrative record); cf. 1st Cir. R. 17(b)(1) (delineating similar filing requirement in connection with direct court of appeals review of agency orders).  When parties ignore this customary practice, they undermine a court's ability to perform meaningful review of agency action.

We need go no further.  For the reasons elucidated above, we vacate the judgment and remand to the district court for additional proceedings consistent with the APA.  We do not reach the merits of this appeal and, therefore, take no view as to the appropriate outcome of those additional proceedings.

**Vacated and remanded.  All parties shall bear their own costs.**