# United States Court of Appeals
## For the First Circuit

No. 12-2492

LUIS M. MEDINA-VELÁZQUEZ, ET AL.,

Plaintiffs, Appellants,

GLADYS E. RIVERA-BERDECÍA, ET AL.,

Plaintiffs,

v.

RUBÉN HERNÁNDEZ-GREGORAT, ET AL.,

Defendants, Appellees,

MOISÉS DEIDÁ-GARCÍA, ET AL.,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

---

Before

Torruella, Lipez and Kayatta,
Circuit Judges.

---

Eduardo Vera Ramírez, with whom Eileen Landrón Guardiola, Luis A. Rodríquez Muñoz, and Landrón & Vera, L.L.P. were on brief, for appellants.
Margarita Luisa Mercado-Echegaray, Solicitor General, with whom Rosa Elena Pérez-Agosto, Assistant Solicitor General, was on brief, for appellees.

---

September 17, 2014

---

**LIPEZ, Circuit Judge**. Luis M. Medina-Velázquez, Juan J. Méndez-Cruz, and Héctor R. Cruz-Medina ("appellants") -- employees of Puerto Rico's Department of Transportation and Public Works ("DTOP")[1] and members of Puerto Rico's Popular Democratic Party ("PDP") -- appeal the district court's dismissal of their claims of political discrimination in violation of the First Amendment to the United States Constitution. Marlene J. Paredes, the spouse of Medina-Velázquez, and Mayra Méndez-Quiñones, the spouse of Méndez-Cruz, also appeal, seeking the reinstatement of their derivative causes of action.

We agree with appellants that they stated plausible First Amendment claims against the appellees who received appellants' cease and desist letters. Hence, we vacate the dismissal of the First Amendment and derivative claims against those appellees.

## I.

In reviewing the grant of a motion to dismiss, we recite the facts as alleged in the complaint and documents incorporated by reference into the complaint. Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). Here the Second Amended Complaint is the operative complaint.

Medina-Velázquez and Méndez-Cruz each served as a DTOP regional Auxiliary Director I -- Medina-Velázquez for the Humacao

---

[1] We follow the district court's convention in using the Spanish acronym.

Region and Méndez-Cruz for the Aguadilla Region. Cruz-Medina served as the DTOP Storage Supervisor for the Ponce Region. All three appellants were active PDP members. All appellants worked in trust positions during past PDP administrations, and Cruz-Medina attended PDP events and participated in party activities, such as the "Concilio de Populares." Appellants claim that appellees, NPP members, knew of their political activity.

Even though appellants performed their DTOP duties "in excellent fashion," appellees, upon the change in political administration to the NPP, discriminated against appellants on the basis of political affiliation by relieving them of their job responsibilities and eliminating their travel allowances. Appellants lost supervisory authority -- their subordinates having been instructed to report to others -- and were not permitted to attend meetings. Ultimately, appellants were left without any staff to supervise and without tasks, except for occasional menial assignments. Cruz-Medina was also subjected to negative comments regarding his political affiliation. He attended meetings to discuss his allegations, but nothing changed.

Appellants sent letters to appellees requesting resolution of the adverse employment actions.[2] Medina-Velázquez sent his letter to Rubén A. Hernández-Gregorat, the Secretary of

_____

[2] Like the district court, we deem these letters incorporated by reference into the complaint.

-3-

DTOP, copying Juan A. Avilés-Hernández, the Executive Director of DTOP; María M. Trinidad-Quiñones, the Human Resources Director of DTOP; and Woldetrudis Cruz-Torres, the Humacao Regional Director of DTOP. Méndez-Cruz wrote to Luz C. del Roldán-Sotomayor, the Aguadilla Regional Director of DTOP, copying Hernández-Gregorat and Avilés-Hernández. Cruz-Medina sent his letter to Trinidad-Quiñones, copying Hernández-Gregorat; Avilés-Hernández; and Amilcar González-Ortiz, the Auxiliary Secretary for Administration.[3] Receiving no redress and no responses to their letters, appellants subsequently brought suit along with six other plaintiffs, claiming, inter alia, that the defendants discriminated on the basis of political affiliation in violation of the First Amendment. The spouses of appellants and their co-plaintiffs also brought derivative claims.[4]

---

[3] Cruz-Medina also copied attorney Celso Feliciano Rivera, who is not a defendant.

[4] Appellants' spouses appeal the district court's dismissal of these derivative claims. We do not separately address the spouses' derivative claims. Any conclusion we draw as to the sufficiency of appellants' First Amendment claims will dictate the same result for the derivative claims. We have acknowledged that "[u]nder Puerto Rico law, close relatives of one who has suffered the slings and arrows of employment discrimination may invoke Article 1802 as a vehicle for prosecuting a cause of action." Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12 (1st Cir. 2007) (citing P.R. Laws Ann. tit. 31 § 5141). "[S]uch a cause of action is wholly derivative and, thus, its viability is contingent upon the viability of the underlying employment discrimination claim." Id. at 12-13.

## II.

Defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). They argued, inter alia, that the plaintiffs had not adequately alleged two elements of a First Amendment political discrimination claim -- (1) that the defendants had knowledge of the plaintiffs' political affiliation and (2) that political affiliation was a substantial or motivating factor for the adverse employment actions.

In response to that motion, pursuant to the proposition in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), that "'pleadings that . . . are no more than conclusions, are not entitled to the assumption of truth,'" the district court asserted that "the mere allegation that a defendant knew, without providing facts as to the source of this knowledge, is insufficient to satisfy a plaintiff's burden to demonstrate a defendant's knowledge of a plaintiff's political affiliation." Amended Opinion and Order, Medina-Velázquez v. Hernández-Gregorat, No. 09-1692 (GAG), at 8 (D.P.R. Jan. 3, 2011) (omission in original) (citing Jiménez-González v. Alvarez-Rubio, 683 F. Supp. 2d 177, 183-84 (D.P.R. 2010); Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 215 (D.P.R. 2009)). On that basis, the court concluded that the complaint's general allegation of defendants' knowledge of plaintiffs' political affiliation was, on its own, insufficient to state a First Amendment claim.

-5-

The court then turned to the particular allegations pertaining to each plaintiff. The complaint included allegations that plaintiffs' letters, which demanded plaintiffs be assigned tasks commensurate with their positions, identified their political affiliation. However, the allegations did not specify to which defendants the letters were sent. Unable to determine from the face of the complaint which defendants had knowledge of plaintiffs' political affiliation and whether this knowledge could have been a motivating factor for defendants' decision to alter or fail to reinstate plaintiffs' employment duties, the court ordered plaintiffs to supply the letters.

After reviewing the letters, the court concluded that appellants' letters described dissatisfaction with reduced duties but did not identify appellants' political affiliation or refer to discriminatory conduct based on political animus. Hence, the court dismissed appellants' First Amendment claims and their spouses' derivative claims.

Conversely, the court found that the remaining six plaintiffs successfully pleaded political discrimination claims against certain defendants. For plaintiff Eric E. Camacho-Resto, the court found two allegations in the operative complaint -- (1) that a particular defendant openly discussed Camacho-Resto's political affiliation and (2) that another defendant threatened Camacho-Resto's future employment -- sufficient to allege the

knowledge element of a political discrimination claim against those two defendants. The court also found the letters of the six plaintiffs sufficient to allege that the respective defendants who received the letters both had, or should have had, knowledge of the respective plaintiffs' political affiliation and committed, or failed to take any action to rectify, the discriminatory acts. Therefore, the court denied defendants' motion to dismiss the First Amendment claims of those six plaintiffs against the respective defendants who received the letters.

After discovery as to the remaining six plaintiffs, the district court denied defendants' motion for summary judgment, finding genuine issues of material fact regarding those plaintiffs' First Amendment political discrimination claims. These six plaintiffs and the defendants then reached a settlement agreement, which the district court approved.

Appellants subsequently filed a motion under Federal Rule of Civil Procedure 59(e) to alter the district court's judgment on defendants' earlier motion to dismiss. Appellants argued that relief was warranted because it had become clear through discovery that the agency had a politically charged environment and that political animus motivated personnel decisions. The district court denied appellants' motion to alter the judgment, finding relief unwarranted and untimely. The court ruled that appellants were not entitled to "a second bite at the apple, simply because co-

plaintiffs who properly plead[ed] claims [were] able to engage in discovery," and appellants could not "piggyback on settling plaintiffs' success and evidence obtained." Order Denying Motion to Alter Judgment, <u>Medina-Velázquez</u> v. <u>Hernández-Gregorat</u>, No. 09-1692 (GAG) (D.P.R. Oct. 25, 2012). The court also observed that since appellants' motion was premised on the discovery in the surviving plaintiffs' cases, appellants could have brought their motion at least by the time discovery closed and should not have waited until almost a year after the remaining plaintiffs settled.

Each appellant appeals the district court's dismissal of his First Amendment claim against only those appellees who received his respective letter expressing dissatisfaction with the reduced job responsibilities.[5] Hence, we limit our review to whether the district court properly dismissed the First Amendment claim of (1) Medina-Velázquez against the recipients of his letter -- Hernández-Gregorat, Avilés-Hernández, Trinidad-Quiñones, and Cruz-Torres; (2) Méndez-Cruz against the recipients of his letter -- Roldán-Sotomayor, Hernández-Gregorat, and Avilés-Hernández; and (3) Cruz-Medina against the recipients of his letter -- Trinidad-Quiñones, Hernández-Gregorat, Avilés-Hernández, and González-Ortiz.

---

[5] While appellants initially appealed the dismissal of their First Amendment claims against all defendants, each appellant, by way of a joint filing after oral argument, withdrew that appeal as to any defendants who did not receive his respective letter.

We review de novo a Rule 12(b)(6) dismissal of appellants' claims. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). We examine whether the operative complaint states a claim for which relief can be granted when we construe the well-pleaded facts in the light most favorable to the plaintiffs, id., accepting their truth and drawing all reasonable inferences in plaintiffs' favor, Grajales, 682 F.3d at 44. We may supplement those facts and inferences with information from documents incorporated by reference into the complaint. Id.

In resolving a motion to dismiss, we use a two-step approach. Ocasio-Hernández, 640 F.3d at 12. First, we "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, we "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotation marks omitted).

The complaint must contain sufficient factual matter to state a plausible claim. Grajales, 682 F.3d at 44. To achieve plausibility, a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial. Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d

711, \_\_, 2014 WL 2786536, at *6 (1st Cir. 2014). "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Rodríguez-Reyes, v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). Nevertheless, the elements of a prima facie case are relevant to the plausibility assessment, forming "part of the background against which a plausibility determination should be made." Id. In the end, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the 'cumulative effect of the [complaint's] factual allegations.'" Id. at 55 (alteration in original) (quoting Ocasio-Hernández, 640 F.3d at 14).

An analysis of plausibility is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense,'" Grajales, 682 F.3d at 44 (quoting Iqbal, 556 U.S. at 679). Moreover, "the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernández, 640 F.3d at 12 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Indeed, "a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation marks omitted). Ultimately, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the

court to draw from the facts alleged in the complaint." <u>Ocasio-Hernández</u>, 640 F.3d at 13.

**IV.**

The First Amendment prohibits government officials from taking adverse actions against public employees on the basis of political affiliation, unless political association is an appropriate factor for employment, <u>Ocasio-Hernández</u>, 640 F.3d at 13, as in "trust" positions, where employees serve at the pleasure of the appointing authority, <u>Grajales</u>, 682 F.3d at 43 n.2. An actionable political discrimination claim has four elements: (1) the plaintiff and defendant belong to opposing political parties; (2) the defendant had knowledge of the plaintiff's political affiliation; (3) an adverse employment action occurred; and (4) political affiliation was a substantial or motivating factor for the adverse action. <u>Ocasio-Hernández</u>, 640 F.3d at 13.

The adequacy of allegations to support the first and third elements of appellants' political discrimination claims is not at issue.[6] Hence, we must analyze whether appellants' complaint adequately supports an inference that appellees had knowledge of appellants' political affiliation and that appellants'

---

[6] Appellees have not developed, and thereby waive, any argument regarding the first element, <u>see</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990), and they concede that appellants' allegations satisfy the third element.

-11-

political affiliation was a substantial or motivating factor for the adverse employment actions.

## A. Appellees' Knowledge

In determining whether the complaint sufficiently supports the inference that appellees knew of appellants' political affiliation, we address the allegations in the complaint and those made in the letters that are properly incorporated by reference into the complaint.

Appellants allege that the fact that they are members of the PDP was "known to defendants at all times relevant to this action." If the allegations of the complaint and the letters had stopped there, the district court would have been correct to dismiss appellants' claims. As we have repeatedly explained, we do not credit "allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12; see also Rodríquez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 286 (1st Cir. 2014) ("A conclusory allegation . . . is one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a specific factual allegation . . . ."). However, appellants went on to make a number of non-conclusory allegations that together support the inference that the defendants knew of their political affiliations. See Ocasio-Hernandez, 640 F.3d at 15 ("[T]he Supreme Court has suggested that allegations that would individually lack the heft to make a claim plausible may suffice to

-12-

state a claim in the context of the complaint's other factual allegations.").

This is not a case in which a single employee was fired or reassigned, and then sought to blame his supervisor for acting with an animus based on party affiliation. Rather, the complaint in this case alleges that, after a change in party control from the PDP to the NPP, there commenced a systematic and more or less simultaneous effort to essentially reassign and eliminate all the duties and responsibilities of the nine plaintiffs, all active PDP members who held trust positions during PDP administrations and non-trust supervisory positions at the start of the new NPP administration. The common modus operandi alleged in the complaint required the active and sustained participation of the plaintiffs' superiors on multiple levels. The same modus operandi was employed with regard to nine different people in numerous regions of the department. The defendants were all higher up officials who belonged to the NPP and who had responsibility for personnel and personnel transactions within their respective regions or across the department. The complaint alleges that defendant Hernandez-Gregorat, the senior official who appointed, or appointed the person who appointed, four of the other defendants, was personally involved in giving direct instructions that the subordinates of two of the plaintiffs be reassigned to other supervisors who lacked the qualifications to perform that

-13-

supervision.  Cf. Travers v. Flight Servs.& Sys., Inc., 737 F.3d 144, 147 (1st Cir. 2013) (reasonable jury could infer that subordinates acted to please their CEO).

Moreover, as noted, appellants allege that they all held trust positions in previous PDP administrations.  Puerto Rico "'trust' employees participate in policymaking and can be hired and fired on political grounds."  Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n.7 (1st Cir. 2010).  We have recognized that "political affiliation is an appropriate requirement for . . . effective performance" in such trust positions.  Id. at 429 (omission in original) (internal quotation marks omitted).  Hence, we have previously held that defendants' knowledge of a plaintiff's political affiliation was inferable where the defendant was aware that the plaintiff previously served in a trust position.  See Grajales, 682 F.3d at 47-48.  Although the plaintiff in Grajales identified his particular trust position and appellants here do not, "[i]n connection with a threshold plausibility inquiry, a high degree of factual specificity is not required."  Id. at 47 (citing Twombly, 550 U.S. at 570).

Finally, each defendant received at least one letter from one plaintiff (and generally more) claiming that their duties were being eliminated in a manner that could not happen without the active efforts of that plaintiff's superiors. Collectively, all of this is enough to raise a plausible inference that a fairly wide-

-14-

ranging and deliberate purge of high profile PDP members was occurring, and that it must have been known to these defendants. Cf. García-González v. Puig-Morales, No. 12-2357, 2014 WL 3765709 at *14-15 (1st Cir. Aug. 1, 2014) (a reasonable jury could infer defendants' knowledge of plaintiffs' political affiliation from the fact that defendants took contracts exclusively from many members of one party and awarded them exclusively to many members of the other party).[7]

## B. Causation

For pleading purposes, appellants "need not establish" causation. Rodríguez-Reyes, 711 F.3d at 56. "[T]he facts contained in the complaint need only show that the claim of causation is plausible." Id. "'Smoking gun' proof of discrimination is rarely available, especially at the pleading stage," and is unnecessary. Grajales, 682 F.3d at 49. Instead, "telltale clues may be gathered from the circumstances surrounding the adverse employment action." Id. In Rodríguez-Reyes, in concluding that the pleadings sufficiently alleged causation, we pointed to "allegations that all of the plaintiffs were affiliated with political parties that opposed the NPP; that none of them ever received a negative evaluation for her work . . . ; that each was

---

[7] Although we hold that appellants' allegations are sufficient to support an inference of appellees' knowledge, appellants are certainly aware of the specific trust positions that they held, and it was unwise for appellants not to identify them.

-15-

replaced by an NPP adherent; and that the critical decisions were made by newly appointed officials loyal to the NPP and in a politically charged atmosphere."  Rodríguez-Reyes, 711 F.3d at 56.

As in Rodríguez-Reyes, appellants alleged that they had always performed their duties in an "excellent fashion." Nevertheless, they lost job responsibilities and subordinates "systematically" "[u]pon the change of administration to the NPP." Cruz-Medina alleged that he experienced "negative comments" regarding his political affiliation and that he was told "he needs to understand that there has been a change in the political party that rules the government."  Plaintiff Camacho-Resto claimed that appellee Cruz-Torres openly discussed Camacho-Resto's political affiliation and that defendant Jose Villegas threatened his continued employment.[8] These allegations support an inference that the atmosphere in appellants' workplace was politically charged, as was the situation in Rodríguez-Reyes.  Moreover, "the close proximity between the regime change and the onset of pervasive cross-party harassment, coupled with the absence of any legitimate reason for much of the offending conduct, permits a plausible inference at the pleading stage that political animus was a

---

[8] We must determine whether the complaint "'in toto'" renders the claims plausible.  See Rodríguez-Reyes, 711 F.3d at 55 (quoting Twombly, 550 at 569 n.14).  Hence, although Camacho-Resto is not an appellant here, we may consider his allegations in the complaint as we make reasonable inferences about the workplace atmosphere.

motivating factor behind the harassment." <u>Grajales</u>, 682 F.3d at 50.

Our inquiry, however, does not end here. We must also assess whether the allegations in the complaint and in appellants' letters incorporated therein sufficiently allege causation with respect to each appellee. <u>See</u> <u>Ocasio-Hernández</u>, 640 F.3d at 16 ("[W]e must determine whether, <u>as to each defendant</u>, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." (internal quotation marks omitted)). The question is whether the appellees who received a particular appellant's letter are "plausible defendant[s]" with respect to that appellant's claim. <u>Id.</u>

Under 42 U.S.C. § 1983, "[p]ublic officials may be held liable . . . for a constitutional violation only if a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." <u>Ocasio-Hernández</u>, 640 F.3d at 16 (internal quotation marks omitted). To that end, "'[a]n important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a "deliberate" or "conscious" choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps.'" <u>Rodríquez-García</u> v. <u>Miranda-Marín</u>, 610 F.3d 756, 768 (1st Cir.

2010) (quoting <u>Lipsett</u> v. <u>Univ. of P.R.</u>, 864 F.2d 881, 902 (1st Cir. 1988) (quoting <u>Pembaur</u> v. <u>City of Cincinnati</u>, 475 U.S. 469, 483-84 (1986))). "Once an official is so notified, either actually or constructively, it is reasonable to infer that the <u>failure</u> to take such steps, as well as the actual <u>taking</u> of them constitutes a choice 'from among various alternatives.'" <u>Lipsett</u>, 864 F.2d at 902 (quoting <u>Pembaur</u>, 475 U.S. at 483).

We recognize that "precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff" when a 12(b)(6) motion to dismiss is filed; therefore, "we take to heart the Supreme Court's call to 'draw on our "judicial experience and common sense" as we make a contextual judgment about the sufficiency of the pleadings.'" <u>Ocasio-Hernández</u>, 640 F.3d at 16 (quoting <u>Sanchez</u> v. <u>Pereira-Castillo</u>, 590 F.3d 31, 48 (1st Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 679)).

On its own, the complaint does not specifically connect the appellees to the adverse employment actions. Each appellant, however, does claim that he "placed in writing his concern" regarding the negative employment actions but that the "communication went unanswered." The district court properly requested these letters, which were incorporated by reference into the complaint, and supplemented the allegations with the identity of the recipient defendants.

We have recognized that a letter may be used as evidence at trial to show for purposes of § 1983 liability that the named recipient personally knew of the writer's employment situation. See Rodriquez-García v. Municipality of Caguas, 495 F.3d 1, 12-13 (1st Cir. 2007); see also Rodríguez-García, 610 F.3d at 768. Whether the addressee actually received the letter is "a factual question appropriate for jury determination." Rodriquez-García, 495 F.3d at 13. Hence, in resolving a motion to dismiss, where the burden is merely demonstrating the plausibility of a claim and all reasonable inferences are drawn in the plaintiff's favor, we can infer that the recipients of the letters were aware of their contents.

Although the district court ascertained the named recipients of the letters, it found that the letters "fail[ed] to identify the writer's political affiliation, and [did] not mention any discriminatory conduct based on political animus." The district court, however, required too much from the letters.[9] The

---

[9] We also disagree with certain of the district court's assessments of the letters. Méndez-Cruz, in his letter, did identify his affiliation and allege it to be the cause of the adverse employment actions: "I do not agree with the manner in which I am being discriminated because I have political beliefs that are contrary to those of the new administration." Although Cruz-Medina's letter alleged "a violation of guaranteed constitutional rights," the court was correct that neither Cruz-Medina nor Medina-Velázquez explicitly identified party affiliation; however, as explained above, the complaint sufficiently alleged facts to support an inference of appellees' knowledge.

-19-

letters provided the link to specific defendants.  Each appellant's letter asked the recipients, individuals in positions of authority over employees of DTOP, to cease and desist from continuing the adverse employment actions and/or to resolve them.  As in Rodríguez-García, the letters support the claim that the named recipients were put on notice of the alleged violations.  See 610 F.3d at 768.  Under our precedent, once the officials were notified of the adverse employment actions, "it is reasonable to infer that the failure to take" affirmative steps necessary to resolve the problem "constitutes a choice" not to act.  Lipsett, 864 F.2d at 902.  Hence, the inference of notice, combined with the complaint's allegation that the letters went unanswered, makes it plausible that the adverse employment actions with respect to a particular appellant "resulted from the direct acts or omissions . . . or from indirect conduct that amounts to condonation or tacit authorization" by the appellees named in that appellant's letter. See Ocasio-Hernández, 640 F.3d at 16 (internal quotation marks omitted).  Indeed, that is the very same conclusion that the district court made for the six other plaintiffs who survived the defendants' motion to dismiss.  We thus hold that each appellant adequately alleged a First Amendment claim against the respective appellees named in that appellant's letter.[10]

---

[10] Our holding makes it unnecessary to reach appellants' second argument that the district court improperly denied their Rule 59(e) motion to alter the judgment of dismissal.

-20-

## V.

In conclusion, we hold that appellants' allegations support reasonable inferences of knowledge and causation, such that each appellant stated a plausible First Amendment claim against the appellees who received that appellant's letter. Hence, we vacate the district court's dismissal of (1) Medina-Velázquez's First Amendment claim and Paredes's derivative claim against Hernández-Gregorat, Avilés-Hernández, Trinidad-Quiñones, and Cruz-Torres; (2) Méndez-Cruz's First Amendment claim and Méndez-Quiñones's derivative claim against del Roldán-Sotomayor, Hernández-Gregorat, and Avilés-Hernández; and (3) Cruz-Medina's First Amendment claim against Trinidad-Quiñones, Hernández-Gregorat, Avilés-Hernández, and González-Ortiz. We remand for further proceedings consistent with this decision.

**Vacated and remanded**. **Costs to appellants**.