Dan CHARLESTON, Plaintiff,

v.

Bill MCCARTHY, in his individual capacity as the Polk County Sheriff; Victor Munoz, in his individual capacity; Ron Richards, in his individual capacity; Kevin Schneider, in his individual capacity; Joe Simon, in his individual capacity; Tim Krum, in his individual capacity; Jim B. Brown, in his individual capacity; and Steve Little, in his individual capacity, Defendants.

Case No. 4:15–cv–00372–SMR–HCA

United States District Court, S.D. Iowa, Central Division.

Signed March 30, 2016

1116

Stephen T. Fieweger, Stephen T. Fieweger, P.C., Davenport, IA, for Plaintiff.

Roger J. Kuhle, Des Moines, IA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO ABATE

### STEPHANIE M. ROSE, UNITED STATES DISTRICT JUDGE

Plaintiff Dan Charleston filed a lawsuit in 2014, alleging Defendant Bill McCarthy among others had committed political discrimination and retaliation against him. In 2015, Plaintiff brought this action, alleging that since he filed the 2014 lawsuit, he had been subjected to additional political discrimination and retaliation by Defendant McCarthy and the other named Defendants. In January 2016, Defendants moved to dismiss Plaintiff's latest Complaint, arguing in part that it fails to state a claim. Because the Court concludes that Plaintiff's Complaint in this case fails to state a claim that is plausible on its face, the Court grants Defendants' motion to dismiss.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kelly v. City of Omaha,* 813 F.3d 1070, 1075 (8th Cir.2016) (citations and internal quotation marks omitted). "A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation and internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation and internal quotation marks omitted).

## II. BACKGROUND

### A. Facts

The Court accepts as true the Complaint's well-pleaded allegations. *See Kelly,* 813 F.3d at 1074. Plaintiff Dan Charleston is employed by the Polk County, Iowa Sheriff's Office. Hired as a Deputy in January 1997, Charleston has been a Sergeant since December 2002. He is the second longest tenured Sergeant in the office.

All the Defendants are members of the Polk County Sheriff's Office; all are alleged to be state actors. Defendant Bill McCarthy is the Sheriff of Polk County. Defendant Victor Munoz is a Chief Deputy in the office. Defendants Kevin Schneider, Tim Krum, and Joe Simon are Chiefs. Defendants Jim B. Brown and Steve Little

are Captains. Defendant Ron Richards is a Lieutenant.

Defendant McCarthy ran for Polk County Sheriff in 2008 as a Democrat. He won. He then ran again as a Democrat in 2012. Plaintiff challenged him on the Republican ticket, having announced in 2010 he would run for the office.

In 2014, Plaintiff Charleston filed suit against Defendant McCarthy (and others), alleging political discrimination, harassment, and retaliation. Filed in this Court, the case, which is ongoing, is Case No. 4:14–cv–00164–SMR–HCA. Since he filed that suit, Plaintiff now alleges, Defendants have discriminated and retaliated against him.

The alleged discriminatory and retaliatory acts occurred over several months in 2015. On May 12, 2015, Defendant Richards issued a letter of counseling, which had been approved by Defendants Brown and Schneider. The letter was given to Plaintiff on June 1. Defendant Richards issued Plaintiff another letter on May 21, this one approved by Defendant Little. The next day, Defendant McCarthy issued Plaintiff a letter, which falsely claimed that Plaintiff was campaigning while on duty and "question[ed] Plaintiff's management capabilities." [ECF No. 1 at 3].

On June 18, 2015, Defendant Richards issued Plaintiff a one-day suspension "over the meeting he had concerning his letter of counseling on June 1, 2015 with the Plaintiff which was approved by" Defendants Brown and Schneider. *Id.* at 4. On June 23, Defendant McCarthy issued a letter that, besides approving "the prior reprimands," informed Plaintiff that an "advisory committee," would be assembled "to review" the proposed one-day suspension. *Id.* Its members would be Defendants Munoz, Krum, and Simon. Defendant McCarthy had never before used an advisory committee "to determine" employee discipline. *Id.* The committee on July 27,

2015, recommended suspending Plaintiff for one day without pay. That same day, Defendant McCarthy adopted the proposed discipline and suspended Plaintiff for one day without pay. Plaintiff's Complaint does not say when, or whether ever, Plaintiff served this suspension.

Plaintiff also alleges that he was threatened with discipline for a separate incident in July 2015. On July 18, Defendants Richards and Brown threatened to demote Plaintiff or to suspend him for five days for alleged insubordination and neglect of duties relating to an incident with an inmate that had occurred in June 2015. At that time the discipline was threatened, Defendants Richards and Brown had not interviewed Plaintiff or any other witness to the incident. The Complaint does not allege that the threatened discipline was imposed.

In September 2015, Defendants Richards and Brown recommended to Defendant Schneider that Plaintiff be given a "3 day off suspension," for (apparently) another incident. *Id.* But the next month, Defendant Schneider "reduced it to a Letter of Reprimand." *Id.* On October 29, 2015, Defendant McCarthy affirmed imposing the reprimand letter.

### B. Procedural History

As mentioned, Plaintiff has another lawsuit against Defendant McCarthy ongoing in this Court. *See generally Charleston v. McCarthy*, Case No. 4:14–cv–00164–SMR–HCA (filed April 24, 2014). He first sought to add his allegations of discrimination and retaliation occurring in 2015 by amending his Amended Complaint in that case. But he missed the deadlines for adding parties and amending the pleadings, meaning that to be granted leave to amend he had to meet Rule 16's good cause standard, not Rule 15(a)'s more liberal one. *See, e.g., Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 610 (8th

Cir.2011). Because Plaintiff failed to show good cause, United States Magistrate Judge Helen C. Adams (the matter having been referred to her for report and recommendation), recommended that Plaintiff's amendment be denied. [*See* ECF No. 66 at 3–4, 6 in Case No. 4:14–cv–00164–SMR–HCA]. The Court accepted Judge Adams's recommendation on September 29, 2015. [*See* ECF No. 67 in Case No. 4:14–cv–00164–SMR–HCA]. This new case followed.

Plaintiff filed his three-count Complaint in this case (4:15–cv–00372–SMR–HCA) on October 21, 2015, alleging pursuant to 42 U.S.C. § 1983 that Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. [ECF No. 1]. Count I, labeled in part "Political Discrimination," is directed at Defendant McCarthy. *Id.* at 4–6. Count II, labeled in part "Retaliation," is likewise directed at Defendant McCarthy. *Id.* at 6–8. Count III, labeled in part "Political Retaliation," is directed at Defendants Munoz, Simon, Little, Schneider, Richards, Brown, and Krum. *Id.* at 8–9.

Defendants moved to dismiss on January 19, 2016, invoking Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF Nos. 28; 29–1]. The same day, Defendants also moved to abate. [ECF Nos. 30; 30–1]. Although he did not respond to this latter motion, Plaintiff resisted the dismissal motion on February 11, 2016. [ECF Nos. 36; 36–1]. Defendants replied eleven days later. [ECF Nos. 38; 38–1]. Oral argument was not requested. The matters are submitted.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

■ As a threshold matter, the Court must address Defendants' claim under Rule 12(b)(1) that this Court lacks subject matter jurisdiction. A litigant asserting he was deprived of a property right in violation of procedural due process must exhaust state remedies before his allegation states a claim under 42 U.S.C. § 1983. *E.g., Crooks v. Lynch,* 557 F.3d 846, 848 (8th Cir.2009). Detecting Fourteenth Amendment due process claims in Plaintiff's Complaint, Defendants argue that because Plaintiff has not exhausted his administrative remedies as to the July 2015 suspension, the Court lacks subject matter jurisdiction over claims based on it. Plaintiff responds by disavowing any due process claims; his claims, he says, are First Amendment retaliation and discrimination claims. [ECF No. 36–1 at 3]. Unswayed, Defendants retort that a plaintiff must all the same exhaust state remedies before bringing First Amendment claims and that Plaintiff has not alleged that he has done so. [ECF No. 38–1 at 3]. His failure to do, Defendants maintain, deprives the Court of subject matter jurisdiction to the extent his claims are based on the July 2015 suspension.

■ But that is not the law. In fact, the requirement that a litigant exhaust state remedies before bringing a procedural due process claim, stated in *Crooks* and others, is just an exception to the general rule; the general rule holds that a plaintiff need not exhaust state remedies before bringing an action under § 1983. *See Hopkins v. City of Bloomington,* 774 F.3d 490, 492 (8th Cir.2014) (citing *Patsy v. Bd. of Regents of Fla.,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)); *see also Christiansen v. W. Branch Cmty. Sch. Dist.,* 674 F.3d 927, 935 (8th Cir.2012) ("[O]ur circuit has recognized a nuanced exception to *Patsy* that applies to certain procedural due process claims."); *Keating v. Neb. Pub. Power Dist.,* 562 F.3d 923, 929 (8th Cir.2009) ("We have recognized an exception to *Patsy*'s general rule that exhaustion of state remedies prior to bringing a section 1983 claim is not required.").

So what Defendants in effect request is that the Court carve out a new exception to the general rule, one that would place a hurdle in front of plaintiffs, like Plaintiff here, with First Amendment retaliation and discrimination claims. But they supply no authority for doing so, nor do they offer any reason for doing so. Absent either (or more likely both), the Court will hew to the general rule. The Court's exercise of subject matter jurisdiction is accordingly proper. *See* 28 U.S.C. § 1331.

### B. Motion to Dismiss for Failure to State a Claim

■ The Court turns then to Defendants' argument that Plaintiff's Complaint fails to state a claim. To state a claim under § 1983, a plaintiff must allege that an official acting under color of state law violated a right protected by federal statute or the Constitution. *Kelly*, 813 F.3d at 1075. The complaint "must include 'either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir.2015) (citation omitted). A complaint that fails to do so will be dismissed. *See id.* at 961 (affirming dismissal for failure to state a claim).

#### 1. Plaintiff's Complaint

The Court starts by unpacking Plaintiff's three-count Complaint. Count I seems to be of two minds. It is labeled "Political Discrimination" but seems to allege both political discrimination and retaliation. [ECF No. 1 at 4]. For example, it alleges (in a conclusory fashion) that Defendant McCarthy violated Plaintiff's First Amendment rights "by discriminating against him ... by refusing to promote him." *Id.* at 5; *cf. Rodriguez–Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir.2014) ("A conclusory allegation ... is one which simply asserts a legal conclusion, such as 'I

was retaliated against,' not a specific factual allegation...."). The same paragraph adds (in a conclusory fashion) that Defendant McCarthy violated Plaintiff's First Amendment rights "by disciplining him because of his political views associations and expressions especially based on the plaintiff's public criticisms of the [manner] in which defendant McCarthy managed the Polk County Sheriff's office." [ECF No. 1 at 5]. This allegation suggests a political-retaliation claim; as will be shown below, a political-retaliation claim is, unlike a political-discrimination claim, based on a plaintiff's speech or conduct. Count I, then, alleges both political discrimination and retaliation, despite its label.

There is as mentioned more to this Complaint than Count I. Counts II and III, like Count I, raise political-retaliation claims, but the claims in Counts II and III are based on different protected conduct than that on which Count I is based. Count II alleges that Defendant McCarthy retaliated against Plaintiff for his pursuing a lawsuit against Defendant McCarthy. *Id.* at 6–8. Similarly, Count III alleges that Defendants Munoz, Simon, Little, Schneider, Richards, Brown, and Krum retaliated against Plaintiff for his pursuing a lawsuit against Defendant McCarthy. *Id.* at 8–9. With the Complaint thus unpacked, the Court turns to the standards it must apply in determining whether the Complaint states a claim.

#### 2. Governing Law

■ Applied to the states under the Fourteenth Amendment, *e.g., Wagner v. Jones*, 664 F.3d 259, 269 (8th Cir.2011), the First Amendment shields public employees from unlawful political discrimination and retaliation, *see id.*; *see also Medina–Velazquez v. Hernandez–Gregorat*, 767 F.3d 103, 109 (1st Cir.2014) ("The First Amendment prohibits government officials from taking adverse actions against public em-

ployees on the basis of political affiliation . . . ."); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir.2012) ("The First Amendment shields public employees from employment retaliation for their protected speech activities."). A claim of political discrimination is based on the employee's status or affiliation; a claim of political retaliation on his speech or his conduct. *See Wagner*, 664 F.3d at 269; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (explaining that under Title VII the antidiscrimination provision "seeks to prevent injury to individuals based on who they are, i.e., their status" and "[t]he antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct"). For all that, the tests used to evaluate political discrimination and retaliation claims are similar enough to be stated together: "a plaintiff alleging either claim must make a prima facie showing that he or she suffered an adverse employment action and that the plaintiff's political affiliation (in a political discrimination claim) or activity (in a retaliation claim) was a substantial or motivating factor in the employer's decision to take the adverse employment action." [ECF No. 9 at 14 in Case No. 4:14-cv-00164-SMR-HCA]; *see also Wagner*, 664 F.3d at 270 (characterizing the political discrimination and retaliation tests as similar). Put another way, to state a claim, Plaintiff's Complaint must allege direct or inferential allegations respecting each of the following elements: (1) a protected affiliation or activity; (2) an adverse employment action; and (3) his affiliation or activity was a substantial or motivating factor in the adverse employment action. *See Brooks*, 776 F.3d at 960 (explaining that a complaint must allege direct or inferential allegations respecting all material elements to state a claim); *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir.2015) (holding that com-

plaint failed to contain specific factual allegations supporting a necessary element of claim).

With this architecture in place, the Court turns to whether Plaintiff has plausibly alleged claims of political discrimination and retaliation.

### a. Protected affiliation and activities

Although Defendants maintain that Plaintiff has failed to state claims for political discrimination or retaliation, they do not dispute that Plaintiff's political affiliation and activities are constitutionally protected. Specifically, Defendant McCarthy does not contest that Plaintiff's political affiliation (Plaintiff alleges he is a Republican) is protected by the First Amendment—which is relevant to Plaintiff's discrimination claim in Count I. *See Wagner*, 664 F.3d at 270 (observing that law-school instructor's affiliation with the Republican Party was protected by the First Amendment). Nor does he contest that Plaintiff was exercising a protected right when he ran for sheriff of Polk County in 2012 and criticized Defendant McCarthy's management—which is relevant to Plaintiff's retaliation claim in Count I. *See Shockency v. Ramsey Cty.*, 493 F.3d 941, 948 (8th Cir. 2007) ("[P]articipation in electoral activities is protected under the First Amendment."); *see also Williams v. City of Carl Junction*, 480 F.3d 871, 874–75 (8th Cir. 2007) ("The criticism of public officials lies at the heart of speech protected by the First Amendment and we have recognized that [r]etaliation by a government actor in response to such an exercise of First Amendment rights forms a basis for § 1983 liability." (citation and internal quotation marks omitted)). Defendants also do not dispute that Plaintiff's filing of a civil rights lawsuit against Defendant McCarthy in 2014 is a protected activity—which is relevant to Plaintiff's retaliation claims in Counts II and III. *See Tyler v.*

*Univ. of Arkansas Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir.2011) ("[F]iling of . . . a civil rights lawsuit [is an] activit[y] protected by the first amendment." (citation and internal quotation marks omitted)). So Plaintiff has adequately pleaded the first element of his prima facie claims of political discrimination and retaliation.

b. Adverse employment action

▮ Plaintiff must plausibly allege he was subjected to an adverse employment action. Attempting to do so, he first alleges that Defendant McCarthy denied him promotions. Failure to promote "[u]nquestionably" can constitute an adverse employment action. *AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir.2014). But Plaintiff's Complaint fails to give Defendant McCarthy "notice of the basis for" Plaintiff's allegations that he was denied a promotion and leaves Defendant McCarthy "without enough information to respond adequately to" its allegations. *Brooks*, 776 F.3d at 960. Plaintiff seeks damages for the pay differential between what he is paid as a Sergeant and what he would be paid as a Lieutenant and alleges he has been "denied promotional opportunities" to Captain, Major, and Chief. [ECF No. 1 at 7]. Yet he does not allege that there was an opportunity for promotion to any of those positions at any time relevant to the Complaint. *See AuBuchon*, 743 F.3d at 643 (finding the failure to promote was not materially adverse because there was no promotional opportunity available); *Moore v. Forrest City Sch. Dist.*, 524 F.3d 879, 885 (8th Cir.2008) (same); *see also AuBuchon*, 743 F.3d at 643 ("We have never held . . . that an employer must create a position to which the complaining party may be promoted."). Nor does Plaintiff allege that he applied for a particular promotion; that he was qualified for a promotion; or that he was denied a specific promotion. He also fails to identify the employee to whom a promotion was given instead.[1] Plaintiff's Complaint contains no specifics about the alleged failure to promote. *See Brooks*, 776 F.3d at 960 (holding complaint failed to state a claim under § 1983 where it left the defendants without notice of the basis of the plaintiff's allegations and without enough information to respond to the complaint's allegations); *Ash*, 799 F.3d at 961 (holding that complaint failed to contain specific factual allegations supporting a necessary element of the plaintiff's claim).[2] Accepting Plaintiff's allegations as true, the Court finds Plaintiff has failed to plausibly allege the denial of a promotion was an adverse employment action.

---

1. Defendant McCarthy hypothesizes that Plaintiff's alleged promotion claims arose before October 21, 2013—in other words, outside the statute of limitations. *See White v. Kautzky*, 494 F.3d 677, 681 (8th Cir.2007) ("[T]he statute of limitations for a § 1983 claim [in Iowa] is two years."); *see also High v. Univ. of Minn.*, 236 F.3d 909, 909 (8th Cir.2000) (per curiam) (stating failure to promote is a discrete act under Title VII). But the absence of relevant dates in the Complaint makes it impossible to confirm or deny this hypothesis.

2. *See also Christiansen*, 674 F.3d at 936 ("'[N]aked assertion[s]' without 'factual enhancement' are insufficient to state a plausible claim for relief." (citation omitted)); *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir.2010) (rejecting allegations that misconduct occurred "on unspecified dates and under circumstances not described" because "[s]uch vague allegations neither provide [the defendant] with fair notice of the nature of [the plaintiff's] claims and the grounds upon which those claims rest nor plausibly establish [the plaintiff's] entitlement to any relief"); *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009) ("[S]ome factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a claim." (citation omitted)).

But Plaintiff also alleges he was subjected to discipline: letters of counseling, reprimand, and a one-day suspension issued in July 2015. A suspension is an adverse employment action; Defendants do not dispute that. *See McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir.2006) ("Suspending [an employee] without pay is an adverse employment action."). Not stopping there, Plaintiff also argues that the lesser actions short of suspension also qualify as adverse actions. "Lesser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer 'serious employment consequences' that adversely affect or undermine his position." *Shockency*, 493 F.3d at 948 (citation omitted). Plaintiff alleges being given a letter claiming (falsely) that he was campaigning while on duty in May 2015, a letter of counseling in June 2015, and two reprimand letters from May 2015 through October 2015. [ECF No. 1 at 3–4]. In addition, he asserts he was threatened with being demoted or being suspended for five days in July 2015 (although he does not allege that this threat was acted upon). *Id.* at 4. Accepting these allegations as true, the Court concludes Plaintiff has adequately alleged adverse employment actions supporting his claims of political discrimination and retaliation in Counts I, II, and III.

Defendants object that Plaintiff's allegations of discipline do not disclose the reasons given by the supervisor for the discipline. Without these specifics, they submit, Plaintiff's allegations do not state a plausible claim. [ECF No. 29–1 at 10]. But Defendants demand too much. To be sure, it is beyond question that a complaint in this circuit must contain specific factual allegations. *See, e.g., Ash*, 799 F.3d at 961. After all, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted). Yet Defendants cite no decision testing complaints against the unforgiving degree of specificity that they propose, and this Court is unaware of such a decision. The point is that the complaint give "notice of the basis for [the plaintiff's allegations]" and "enough information" to enable the defendant to respond adequately. *Brooks*, 776 F.3d at 960. Plaintiff here alleges the type of discipline imposed, who imposed it, and when it was imposed. *Cf. Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir.2013) ("They are non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety."). These allegations will do.

c. Substantial or motivating factor

The remaining question is whether Plaintiff has adequately alleged that his political affiliation or conduct was a substantial or motivating factor in the one-day suspension and other discipline imposed upon him. As mentioned, to state a claim a complaint must contain specific factual allegations supporting each element of the claim. *See, e.g., Ash*, 799 F.3d at 961. There is no shortage of Eighth Circuit decisions applying this standard, but the Eighth Circuit does not appear to have applied it to a complaint alleging political discrimination or retaliation. The Eighth Circuit has stressed though that "temporal proximity between protected activity and an adverse employment action can contribute to establishing the third element of a prima facie case of [political] retaliation." *Davison v. City of Minneapolis*, 490 F.3d 648, 657 (8th Cir.2007). In *Davison*, a case before the court on appeal of a grant of summary judgment, the Eighth Circuit held that the close temporal proximity between the plaintiff's protected activities and three promotions she was denied supported a finding of causation. *See id.* at

657–58. So *Davison* offers a lesson about pleading a political retaliation claim—the timeline is important. But for further, specific guidance on how a plaintiff adequately pleads this last element of his prima facie claim, the Court must search beyond this circuit.

The United States Court of Appeals for the First Circuit, whose decisions in this area have influenced the Eighth Circuit, *see Wagner*, 664 F.3d at 270, has emphasized that when pleading these claims, a plaintiff "need not *establish* this element; the facts contained in the complaint need only show that the claim of causation is plausible," *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 56 (1st Cir.2013); *see also Caban–Rodriguez v. Jimenez–Perez*, 558 Fed.Appx. 1, 5 (1st Cir.2014) ("[W]e see no distinction between a political discrimination and political retaliation claim."). " 'Smoking gun proof of discrimination is rarely available, especially at the pleading stage,' and is unnecessary." *Medina–Velazquez*, 767 F.3d at 111 (citation and additional internal quotation marks omitted). "Instead, 'telltale clues may be gathered from the circumstances surrounding the adverse employment action.' " *Id.* (citation omitted). The First Circuit has applied these principles many times, insisting—as the Eighth Circuit has in addressing other types of claims—each time on specific allegations supporting an inference of causation. *See, e.g., id.* at 113 (holding that complaint adequately pleaded causation); *Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 19 (1st Cir.2011) (concluding that complaint's allegations supported a reasonable inference that the plaintiffs' political affiliation motivated terminations).

*Medina–Velazquez*, *Rodriguez–Reyes*, and *Ocasio–Hernandez* are three examples. In all three cases, the First Circuit reversed the district court's dismissal of political discrimination claims, holding that the plaintiffs had adequately pleaded causation. See *Medina–Velazquez*, 767 F.3d at 113; *Rodriguez–Reyes*, 711 F.3d at 57; *Ocasio–Hernandez*, 640 F.3d at 19. In doing so, the court highlighted allegations supporting a plausible inference of causation: that none of the plaintiffs had ever received negative reviews, *Medina–Velazquez*, 767 F.3d at 111; *Rodriguez–Reyes*, 711 F.3d at 56; that negative comments had been made regarding a plaintiff's political affiliation, Medina–Velazquez, 767 F.3d at 111; and that employees of the preferred political party received preferential treatment, *Ocasio–Hernandez*, 640 F.3d at 18. Besides these allegations and others, the First Circuit in each case underscored the timeline. In *Rodriguez–Reyes*, for instance, the court found the proximity of political regime change and the adverse employment actions "suggestive." 711 F.3d at 56; see also *Medina–Velazquez*, 767 F.3d at 111 (finding inference of causation plausible in view of allegations that among other things harassment began shortly after regime change); *Ocasio–Hernandez*, 640 F.3d at 18 ("Although ... temporal proximity ... is not itself sufficient to satisfy a plaintiff's burden of proof on the causation element of a political discrimination claim, it unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated."). These and other " 'telltale clues,' " the First Circuit in each case found, supported an inference of causation. *Medina–Velazquez*, 767 F.3d at 111 (citation omitted).

With this groundwork laid, the Court turns to whether Plaintiff has plausibly alleged that his political affiliation or conduct was a substantial or motivating factor in the one-day suspension and other discipline imposed upon him, starting with Count I, before moving to Counts II and III.

#### i. Count I: claims of political discrimination and retaliation

Unlike the complaints in *Medina–Velazquez*, *Rodriguez–Reyes*, and *Ocasio–Hernandez*, Plaintiff's Complaint does not allege facts sufficient to create a plausible inference that his political affiliation or conduct alleged in Count I was a substantial or motivating factor in the adverse employment actions. The Complaint's only allegation supporting that inference is the allegation that Defendant McCarthy falsely accused Plaintiff of campaigning while on duty. [ECF No. 1 at 3]. But Plaintiff does not allege how the charge was false, and he does not allege that the other incidents where discipline was imposed were based on false accusations. Nor does Plaintiff allege that he never "received a negative evaluation" for his work, *Rodriguez–Reyes*, 711 F.3d at 56, or that he "had always performed [his] duties in an 'excellent fashion,'" *Medina–Velazquez*, 767 F.3d at 111; *see also Hernandez v. Cook Cty. Sheriff's Office*, No. 13 C 7163, 2014 WL 1339686, at *2 (N.D.Ill. Apr. 3, 2014) (unpublished) (finding "the key fact that (barely) pushes the complaint across that line is the assertion that Plaintiffs were extremely good employees who satisfactorily performed their duties at all relevant times"). And—apart from a passing conclusory allegation about harassment—he does not allege that Defendant McCarthy or anyone acting at his direction made negative comments about Plaintiff's political affiliation or protected activities. *See, e.g., Medina–Velazquez*, 767 F.3d at 111 (citing negative comments regarding political affiliation as an allegation supporting a finding of causation). Nor does Plaintiff allege that he was treated differently than those who shared Defendant McCarthy's political stripes. *See Ocasio–Hernandez*, 640 F.3d at 18 (contrasting treatment of the plaintiffs with those affiliated with the preferred party, who had been promoted); *see also id.* ("We have previously described such comparative evidence as 'helpful' in demonstrating that a particular plaintiff was targeted for his or her political views." (citation omitted); *cf. Jones v. City of St. Louis*, 555 Fed.Appx. 641, 642 (8th Cir.2014) (finding the plaintiff had stated a Title VII discrimination claim where he alleged among other things that similarly situated whites were treated more favorably). These specific allegations (and others like them) are critical to supporting an inference of causation at the pleading stage; Plaintiff's Complaint lacks them.

Besides lacking those allegations, the Complaint does not detail the timeline of the retaliation alleged in Count I. *See Rodriguez–Reyes*, 711 F.3d at 56. Plaintiff claims he "public[ally] critic[ized] ... the [manner] in which Defendant McCarthy managed the Polk County Sheriff's office." [ECF No. 1 at 5]. But Plaintiff does not expressly allege when,[3] although he implies the criticism may have been lodged during his 2012 canvass for sheriff. If that is the case, then the inference that the adverse actions taken in 2015 were in retaliation for criticisms registered in 2012 has vanished. *See Tyler*, 628 F.3d at 986 ("As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker

---

3. Nor does Plaintiff allege what his criticisms of Defendant McCarthy's management were specifically, where he made the criticisms, or whether Defendant McCarthy was even aware of them. Plaintiff does not allege for instance that Defendant McCarthy made any statements indicating he knew of Plaintiff's criticisms. *Cf. Davison*, 490 F.3d at 656–57 (citing statements made by supervisor concerning employee's protected political activities as supporting inference of causation). Plaintiff's Complaint is thus lacking in additional allegations that would support an inference of causation.

and requires stronger alternate evidence of causation. The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." (citations omitted)).[4] If that is not the case, then the Complaint leaves Defendant McCarthy (and the Court) wondering when Plaintiff otherwise made his critiques, for it contains no allegations at all indicating he has criticized Defendant McCarthy's management since 2012. *See Ash*, 799 F.3d at 962 (searching complaint for specific allegations); *Brooks*, 776 F.3d at 960 (same). Without specific allegations concerning when the criticisms were made, the Court cannot determine whether temporal proximity supports an inference that Plaintiff's protected activity was a substantial or motivating factor in the adverse actions taken against him.

Nor is there anything particularly suggestive about the timeline of the purported discrimination in Count I. *See Rodriguez–Reyes*, 711 F.3d at 56. One can reasonably infer that Defendant McCarthy has been aware of Plaintiff's political affiliation since at least 2010, when Plaintiff announced he would run for sheriff in 2012. But Plaintiff alleges that Defendant McCarthy's acts of discrimination did not begin until May 2015. This yawning gap does not suggest that Plaintiff's political affiliation was a substantial or motivating factor in the adverse employment actions. *See Rodriguez–Reyes*, 711 F.3d at 56–57; *Medina–Velazquez*, 767 F.3d at 111; *see also Tyler*, 628 F.3d at 986 (explaining the inference generated by temporal proximity vanishes when time is measured in months). The timeline as suggested by the Complaint thus does not support an inference that Plaintiff's political affiliation was a substantial or motivating factor in the adverse actions taken against him.

In sum, Count I of Plaintiff's Complaint lacks the "'telltale clues'" plausibly suggesting that Plaintiff's political affiliation or conduct was a substantial or motivating factor in the adverse employment actions. *Medina–Velazquez*, 767 F.3d at 111 (citation omitted). Accepting the Complaint's allegations as true, the Court concludes that Count I fails to state a claim of political discrimination or retaliation. The Motion to Dismiss is granted in this respect.[5]

---

**4.** The Court notes also that Plaintiff's ongoing lawsuit filed in 2014 already alleges Defendant McCarthy retaliated against Plaintiff for his 2012 campaign. *Cf. Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C.Cir.2015) ("[A] plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." (citation and internal quotation marks omitted)).

**5.** The Court acknowledges that in both Counts I and II Plaintiff alleges:

Defendant McCarthy has engaged in such discriminatory and retaliatory conduct toward Dan willfully and maliciously in that he has referred to Dan as dangerous, cancerous, as radical as one can get, accused him of being a shadow sheriff, compared Dan to Timothy McVeigh the Oklahoma City bomber and in the Fall 2012 told Dan that he would not promote Dan to Lieutenant due to Dan's political beliefs and told Dan he was going to attempt to decertify Dan in February 2013 and has continued [to] impose discipline on plaintiff through October 2015, thereby entitling Dan to recover punitive damages in an amount to become determined by the trier of fact.

[ECF No. 1 at 5, 7]. The Court has not credited this allegation in analyzing Plaintiff's Complaint for three reasons. First, except for the generic reference to discipline imposed in 2015, the allegation is lifted line-for-line from Plaintiff's Amended Complaint in Case No. 4:14–cv–00164–SMR–HCA. [*Compare id., with* ECF No. 10 at 8 in Case No. 4:14–cv–00164–SMR–HCA]. Second, and relatedly, the allegation pertains to conduct that occurred before the time relevant to Plaintiff's Complaint in this particular case, except for the reference to discipline imposed in 2015. And third, except for the reference to discipline imposed in 2015, the Complaint does

### ii. Counts II and III: political-retaliation claims

The Court turns now to Plaintiff's claims of retaliation in Counts II and III, both based on Plaintiff's pursuit of his other lawsuit against Defendant McCarthy. The Court starts here with the timeline, asking whether the temporal proximity between the protected activity and the adverse employment actions supports an inference of causation. *See e.g., Davison,* 490 F.3d at 657; *Rodriguez–Reyes,* 711 F.3d at 56. In *Davison,* the Eighth Circuit found temporal proximity supported an inference of causation, underscoring evidence that the plaintiff was denied three promotions while her protected activities (publicly criticizing a superior's management) "were ongoing and continuous." 490 F.3d at 657. As with the plaintiff in *Davison,* Plaintiff's protected activity— maintaining a lawsuit against Defendant McCarthy—was "ongoing and continuous" in 2015. *Id.* Plaintiff has alleged that he filed his lawsuit in Case No. 4:14–cv–00164–SMR–HCA in 2014. The lawsuit is ongoing even now. *See Sioux Biochemical, Inc. v. Cargill, Inc.,* 410 F.Supp.2d 785, 797 (N.D.Iowa 2005) (explaining that a court ruling on motion to dismiss under Rule 12(b)(6) "may ... take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings"). And as noted above, Plaintiff has alleged that Defendants took adverse action against him in May through October 2015, while his other lawsuit against Defendant McCarthy was ongoing and continuous. *See Davison,* 490 F.3d at 657. Unlike the claims in Count I, then, the proximity of protected activity and adverse employment actions alleged in Counts II and III supports an inference of causation.

But temporal proximity alone is insufficient to state a claim for political retalia-

tion. *See Medina–Velazquez,* 767 F.3d at 111 (examining complaint's allegations besides those suggesting temporal proximity); *Rodriguez–Reyes,* 711 F.3d at 56 (same); *Ocasio–Hernandez,* 640 F.3d at 18 (stating that temporal proximity "unquestionably *contributes* at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated" and searching for allegations besides those suggesting temporal proximity (emphasis added)); *cf. Kamholtz v. Yates Cty.,* 800 F.Supp.2d 462, 465 (W.D.N.Y.2011) ("A public-employee plaintiff cannot simply comb through everything that he has done or said publicly over the years, seize upon some arguably protected activity that preceded some allegedly adverse action, and set forth a claim based on the unsupported conclusion that one led to the other."). In *Hernandez,* the plaintiffs alleged, like Plaintiff here, that the defendants had retaliated against them for filing a federal civil rights lawsuit alleging First Amendment violations. *See* 2014 WL 1339686, at *1. The defendants moved to dismiss this second lawsuit, arguing that it failed to state a claim. *See id.* According to the complaint, the defendants were aware of the first lawsuit and had taken adverse actions against the plaintiffs. *Id.* at *2. These allegations alone, the court explained, "were merely consistent with" the defendants' liability, not permitting more than an inference of possible misconduct. *Id.;* *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (citation and internal quotation marks omitted)). Still the court found the plaintiffs had stated a claim, reasoning

---

not connect the comments allegedly made by Defendant McCarthy to any of the discrimina-

tory or retaliatory conduct alleged to have occurred in this case.

that what "push[ed] the complaint across" the line was the plaintiffs' allegation that they "were extremely good employees who satisfactorily performed their duties at all relevant times," implying that there was no reason to treat them adversely. *Hernandez*, 2014 WL 1339686, at *2. Like the complaint in *Hernandez*, Plaintiff's Complaint alleges in Count III that Defendants Munoz, Simon, Little, Schneider, Richards, Brown, and Krum "were aware that Plaintiff had sued" Defendant McCarthy. [ECF No. 1 at 8]. Yet unlike the complaint in *Hernandez*, Plaintiff's Complaint, as the Court detailed above, does not allege that he "satisfactorily performed [his] duties at all relevant times," *Hernandez*, 2014 WL 1339686, at *2, that he never received a negative review, *Rodriguez–Reyes*, 711 F.3d at 56, or that he always performed his duties in an excellent fashion, *Medina–Velazquez*, 767 F.3d at 111. In short, Plaintiff's Complaint is missing the type of allegation that pushed the complaint in *Hernandez* across the line separating possibility and probability.

To be sure, Plaintiff alleges that Defendant McCarthy issued him a letter based on a false accusation. But as noted, Plaintiff does not allege how the charge was false, and he does not allege the other incidents where discipline was imposed were based on false charges. In addition, Plaintiff alleges in Count III that Defendants Munoz, Simon, Little, Schneider, Richards, Brown, and Krum "had expressed disdain or negative statements about [Plaintiff] to other members of the Polk County Sheriff's department concerning [Plaintiff's] lawsuit." [ECF No. 1 at 8–9]. But Plaintiff does not allege what the disdainful or negative statements were, when they were made, or to which members of the Sheriff's department they were made. Absent these specifics and others, Plaintiff's Complaint does not state a plausible claim for relief in Counts II and III. *See Brooks*, 776 F.3d at 960 (finding com-

plaint lacked specific allegations supporting his claims, leaving the defendants without notice of the basis of the plaintiff's allegations and without enough information to respond to the complaint's allegations); *Ash*, 799 F.3d at 961 (holding that complaint failed to contain specific factual allegations supporting a necessary element of the plaintiff's claim).

In sum, Counts II and III of Plaintiff's Complaint lack the " 'telltale clues' " plausibly suggesting that Plaintiff's conduct was a substantial or motivating factor in the adverse employment actions. *Medina–Velazquez*, 767 F.3d at 111 (citation omitted). Accepting the Complaint's allegations as true, the Court concludes that Counts II and III fail to state a claim of political retaliation. The Motion to Dismiss is granted in this respect.

### C. Amendment

 In the concluding paragraph of his resistance to Defendants' dismissal motion, Plaintiff requests leave to amend if the Court finds his pleadings defective. [ECF No. 36–1 at 3]. "Although leave to amend shall be freely given when justice so requires, plaintiffs do not have an absolute or automatic right to amend." *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir.2009) (citations and internal quotation marks omitted). To preserve his right to amend, a plaintiff must submit the proposed amended complaint along with his motion. *Id.*; *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir.1985); *see also* Local Rule 15 ("A party moving to amend ... a pleading ... must ... file ... the proposed amended ... pleading."). Applying this rule, the Eighth Circuit has repeatedly upheld denials of leave to amend. In *Clayton*, to take just one example, the plaintiff concluded her response to a dismissal motion with a request for leave to amend but did not attach a proposed amended complaint or

1130

offer the substance of a proposed amended complaint. 778 F.2d at 460. The Eighth Circuit held that leave to amend was properly denied. *See id.; see also Novastar*, 579 F.3d at 884–85 (affirming denial of leave to amend under similar circumstances); *Dudek v. Prudential Sec. Inc.*, 295 F.3d 875, 880 (8th Cir.2000) (same); *Wolgin v. Simon*, 722 F.2d 389, 394–95 (8th Cir.1983) (same). Like the plaintiff in *Clayton*, Plaintiff here, despite being put on notice of his Complaint's deficiencies by Defendants' Motion to Dismiss, did not attach a proposed amended complaint, nor does he describe the substance of his proposed amended complaint. Plaintiff's request for leave to amend is thus denied. *See, e.g., Clayton*, 778 F.2d at 460; *cf. U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 823 (8th Cir.2009) ("[P]ost-judgment leave to amend may be granted if timely requested.").

## IV. CONCLUSION

For the reasons stated, the Defendants' Motion to Dismiss Complaint [ECF No. 28] is GRANTED. As a consequence, Defendants' Motion to Abate Complaint [ECF No. 30] is DENIED as moot. Plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED.