# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-2676
_____

Dan Charleston

*Plaintiff - Appellant*

v.

Bill McCarthy, in his individual capacity and official capacity as the Polk County Sheriff; Kevin Schneider, in his individual capacity; Victor J. Munoz, in his individual capacity; Ron Richards, in his individual capacity; Tim Krum, in his individual capacity; James B. Brown, in his individual capacity; Joe Simon, in his individual capacity; Brent Long, in his individual capacity; Shawn Van Hoozer, in his individual capacity; Lola Evans, in her individual capacity; Michael Campbell, in his individual capacity

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: April 14, 2021
Filed: August 10, 2021
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Dan Charleston returns to this Court, again attempting to salvage failed claims related to his employment with the Polk County Sheriff's Department. This time, Charleston appeals the district court's[1] adverse grant of summary judgment on his political retaliation claim related to disciplinary measures and his ultimate termination from the Sheriff's Office. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Dan Charleston joined the Polk County Sheriff's Office in 1997 and was promoted to Sergeant in 2002. In 2012 and 2016, Charleston challenged the Polk County Sheriff Bill McCarthy in the race for Sheriff, but McCarthy won reelection both times. Following his first loss, Charleston filed suit against Sheriff McCarthy and other Polk County officials, alleging political discrimination and retaliation as a result of his campaign as the Republican candidate for Sheriff.[2]

In 2015, while that ultimately unsuccessful lawsuit was still pending, Charleston was serving as one of three sergeants assigned to the Court Services Division.[3] The Court Services Division is responsible for transporting and housing inmates for their court appearances. While Charleston was serving in this position, certain deputies complained that Charleston engaged in favoritism, alleging that

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

[2]In Charleston v. McCarthy, 926 F.3d 982, 991 (8th Cir. 2019), this Court affirmed the district court's grant of summary judgment in favor of defendants, concluding that Charleston failed to establish a connection between his protected activity and any adverse employment actions.

[3]Charleston filed another lawsuit in 2015, again alleging claims of political discrimination and retaliation. The district court dismissed that suit in its entirety, and Charleston did not appeal the dismissal. See Charleston v. McCarthy, 175 F. Supp. 3d 1115, 1130 (S.D. Iowa 2016).

Charleston gave his friends within the division preferential treatment by giving them the more desirable assignments or assigning them fewer court trips, while giving the less desirable assignments, which required deputies to come in early or stay late, to those with whom he was not friendly. In response to these complaints, then-Chief Kevin Schneider and Lieutenant Ron Richards made changes to Charleston's job duties, ordering him to consult with his direct supervisors before making any changes to the list assigning deputies to specific court trips.

On April 22, 2016, Charleston made changes to the court trip list without first consulting with his supervisors. Charleston received a Notice of Disciplinary Action, which cited Charleston for being insubordinate and violating a lawful order. After reviewing the Notice of Disciplinary Action form and upon recommendations from the command staff, Sheriff McCarthy also imposed a two-day suspension. Charleston appealed his suspension to the Polk County Civil Service Commission, which upheld his suspension. Charleston filed an appeal of this decision in the Polk County District Court, but that appeal was dismissed on February 23, 2017, and Charleston did not pursue any further appeal. Less than one month later, on May 10, 2016, Charleston again made changes to the court trip list without first consulting with his supervisors. Charleston again received a Notice of Disciplinary Action for insubordination and violation of a lawful order, which recommended that he be demoted for his repeated incidents of insubordination. Command staff ultimately recommended to Sheriff McCarthy that Charleston be terminated because of his continued unwillingness to follow verbal and written orders.

At the same time the disciplinary review of both of the April and May 2016 incidents was pending, Sheriff McCarthy asked the Polk County Human Resources Department to investigate numerous complaints that Charleston was creating a hostile work environment in the Court Services Division. During this investigation, Michael Campbell, who had been assigned by McCarthy to lead the investigation, interviewed Deputy Beverly Pursley about her experience with Charleston. Deputy Pursley recounted an incident where Charleston demanded that she pick up toilet paper in the holding cells while she was on her lunch break. Deputy Pursley told

Campbell that she had been humiliated by the incident. Campbell followed up the investigation of this incident with Charleston, asking him details about the event but declining to specifically name Deputy Pursley. The following day, while Pursley was eating lunch, she overheard another deputy, Deputy Mark VanDePol, make a joke about toilet paper in the holding cells and overheard Charleston laughing with VanDePol in response. VanDePol later admitted that he had heard about the incident between Charleston and Pursley. Charleston was transferred from Court Services to Patrol Services due to his interference with a confidential investigation and was again issued a Notice of Disciplinary Action. The Notice stated that Charleston had discussed confidential HR matters with other employees, that VanDePol's comment in front of Pursley was a coordinated act of retaliation which contributed to a hostile work environment, and that Charleston should have intervened and stopped the conversation with VanDePol but failed to do so. Charleston's supervisor, Lieutenant Shawn VanHoozer, recommended that Charleston be terminated based on a charge of neglect of duty and his failure to encourage harmony and respect in the Sheriff's Office. Command staff agreed with Lieutenant VanHoozer's recommendation, and after meeting with Charleston and reviewing his reply to the Notice, they formally recommended that Sheriff McCarthy terminate Charleston.

On June 23, 2017, Sheriff McCarthy, after reviewing the recommendations of the command staff, terminated Charleston based on his second incident of insubordination and the neglect of duty charge. Charleston appealed his termination to the Polk County Civil Service Commission, and after a four-day hearing, the Commission upheld Charleston's termination. Charleston challenged the Commission's determination in state court, where the decision was upheld both by the Polk County District Court and the Iowa Court of Appeals.

Charleston filed this action under 42 U.S.C. § 1983, alleging political discrimination, political retaliation, and violation of his due process rights against Sheriff McCarthy, members of his command staff, and Polk County officials, including Human Resources Department employees Michael Campbell and Lola Evans, who had been involved in the investigation into Charleston. By the summary

-4-

judgment stage, the only remaining claims were a political retaliation claim against Sheriff McCarthy and a due process claim against McCarthy, Evans, and Campbell. The defendants moved for summary judgment, which the district court granted. The district court held that McCarthy was entitled to summary judgment on Charleston's retaliation claim. It concluded that Charleston was collaterally estopped from rearguing his claims—that his termination for his second incident of insubordination and his neglect of duty were retaliation for running against McCarthy for sheriff— because they had been conclusively resolved through the Civil Service Commission and state court proceedings. It further concluded Charleston failed to prove a causal connection between his two-day suspension and his campaign for sheriff. The district court also granted summary judgment in favor of defendants on Charleston's due process claim, which Charleston does not challenge on appeal. Instead, Charleston challenges only the district court's determinations as to the political retaliation claim against Sheriff McCarthy.

II.

Charleston asserts that the district court erred in granting summary judgment on the political retaliation claim, specifically asserting that it erroneously concluded that collateral estoppel barred Charleston's claim based on his termination for insubordination and neglect of duty and that the district court erred in concluding that Charleston had failed to establish a prima facie case of political retaliation based on his two-day suspension. "This [C]ourt reviews de novo the grant of summary judgment. Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Green Plains Otter Tail, LLC v. Pro-Env't, Inc., 953 F.3d 541, 545 (8th Cir. 2020) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations omitted). "In reviewing the district court's grant of summary judgment, we review de novo its conclusions of law, including the availability of [collateral estoppel]." Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 757 (8th Cir. 2003) (citation omitted).

## A.

We first consider Charleston's argument that the district court erred in concluding that collateral estoppel barred Charleston from pursuing his political retaliation claim based on those issues he raised in his termination appeal. The district court determined that Charleston had already litigated the issues related to his termination—specifically whether his discipline was unfounded and whether his termination was retaliation—through the Civil Service Commission and in state court. Charleston asserts that collateral estoppel does not apply because the Polk County District Court and Iowa Court of Appeals did not directly address whether political retaliation occurred, with only the Civil Service Commission reaching a determination on this issue, and that body's decisions are not entitled to preclusive effect. We disagree.

"Pursuant to federal law, judicial proceedings in one state will have the same full faith and credit in every court within the United States as they have by law in the courts of such state from which they are taken." Haberer v. Woodbury Cnty., 188 F.3d 957, 961 (8th Cir. 1999) (citation omitted). This applies "to issues decided by state courts even where the subsequent federal case is brought pursuant to 42 U.S.C. § 1983." Id.

> Under the doctrine of collateral estoppel, also called issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

Turner v. U.S. Dep't of Just., 815 F.3d 1108, 1111 (8th Cir. 2016) (alteration in original) (citation omitted). "Issue preclusion serves a dual purpose. First, it protects litigants from the 'vexation of relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation.' Second, it furthers the interest of judicial economy and efficiency by preventing unnecessary litigation." Haberer, 188 F.3d at 961 (citations omitted).

"We look to state law in determining whether to apply issue preclusion." FAG Bearings Corp., 335 F.3d at 758. Because the state proceedings occurred under Iowa law, we apply Iowa law, which provides:

> The party invoking issue preclusion must establish four elements: (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

Winger v. CM Holdings, L.L.C., 881 N.W.2d 433, 451 (Iowa 2016). "Before applying the four-part test, a status test must be met, i.e., 'the parties in both actions must be the same,' or 'there must be privity between the parties against whom issue preclusion is invoked and the party against whom the issue was decided in the first litigation.'" Haberer, 188 F.3d at 962 (citation omitted) (applying Iowa law). The district court determined that the status test and all elements of collateral estoppel were satisfied.

On appeal, Charleston does not raise a challenge to the district court's determinations regarding the status test or the elements of collateral estoppel. Instead, Charleston argues that collateral estoppel is inapplicable because only the Civil Service Commission determined his claim on the merits, and it is not a court of competent jurisdiction for which collateral estoppel may apply.[4] Charleston urges

---

[4]We note that both the Polk County District Court and the Iowa Court of Appeals issued written opinions affirming the Civil Service Commission's upholding of Charleston's termination. Each determined that substantial evidence supported the Civil Service Commission's conclusion that the disciplinary action was warranted based on Charleston's insubordination and neglect of duty. Neither court discussed specifically Charleston's claims of retaliation. Although we do not agree with Charleston's characterization that only the Civil Service Commission rendered a decision on the merits, because we conclude that the Civil Service Commission order is entitled to preclusive effect even if it were the only decision on

-7-

application of a per se rule that decisions from the Civil Service Commission cannot be entitled to preclusive effect. But that misreads Iowa law, which does not demand a per se rule. Indeed, Iowa courts "have given preclusive effect to an agency's adjudicatory decisions in subsequent court proceedings under certain circumstances[,] . . . [b]ut [the Iowa Supreme Court] ha[s] cautioned against routinely according preclusive effect to agency determinations." Winger, 881 N.W.2d at 450. The Iowa Supreme Court's caution is rooted in the lack of formality often seen in administrative proceedings:

> [R]esolution of a[n administrative] dispute does not require formal court-like proceedings, and informality is considered a virtue of most administrative proceedings. When, however, collateral estoppel effect is given [to] issue determinations made in an administrative proceeding, informality becomes a problem. Judicial proceedings operate within a system where each issue resolved is subject to appellate review. Parties develop the crucial issues, introduce the important evidence, and have an independent fact finder resolve legal and evidentiary conflicts. The reviewability of this process ensures clear and careful issue resolution. Administrative proceedings are not structured with the same goals in mind as those of formal court-like proceedings, especially with regard to issue determinations.

Id. (second alteration in original) (citations omitted). Here, none of those concerns apply. Charleston's termination appeal before the Polk County Civil Service Commission lasted four days, and each party was represented by counsel. An administrative law judge presided over the proceedings, where the parties presented opening statements, questioned witnesses, and were permitted to cross-examine the opposing party's witnesses and present documentary, video, and audio evidence. The Civil Service Commission then issued a 19-page decision detailing the background of the case, the proceedings, and the issues for resolution before affirming Charleston's termination. Although not all formalities of a court

---

the merits, any question about what precisely the Iowa courts addressed in their decisions is immaterial.

proceeding, including observation of the rules of evidence, were present, the adjudicatory process here was so detailed and court-like that we conclude this case presents those "certain circumstances" under which it is appropriate to afford preclusive effect to the Civil Service Commission's determination. Id.; cf. Haberer, 188 F.3d at 964 ("We hold that collateral estoppel does apply because the issue of constructive discharge was specifically and directly raised, litigated, and decided before the [Civil Service Commission], appealed to the state district court, and thereafter appealed and resolved on the merits by the Iowa Supreme Court."); Yancy v. McDevitt, 802 F.2d 1025, 1030 (8th Cir. 1986) (finding school board hearing regarding teacher's termination was adjudicatory in nature, entitling it to preclusive effect because issue preclusion requirements under Iowa law were all satisfied). The district court thus did not err in concluding that collateral estoppel barred Charleston's claims arising from his termination appeal.

B.

We next consider Charleston's argument that the district court erred in concluding that he failed to make a prima facie showing of political retaliation. Because we conclude that he is collaterally estopped from claiming his termination was retaliation for his campaign, we consider his retaliation claim only as it relates to his two-day suspension. To make a prima facie showing of First Amendment retaliation, the plaintiff must show that "(1) [ ]he engaged in conduct protected by the First Amendment; (2) [ ]he suffered an adverse employment action; and (3) the protected activity was a substantial or motivating factor in the employer's decision to take the adverse employment action." Charleston, 926 F.3d at 989 (alterations in original) (citation omitted). "To prove a causal connection under the third element, a plaintiff must prove an employer's retaliatory motive played a part in the adverse employment action. '[E]vidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to prove a causal connection.'" Hughs v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006) (alteration in original) (citations omitted).

Charleston asserts that he engaged in protected conduct by running for sheriff and that he suffered adverse employment actions in the form of his two-day suspension and termination. Again, we consider only the two-day suspension as the adverse employment action. McCarthy does not dispute that Charleston's campaign constitutes a protected activity or that his two-day suspension constituted an adverse employment action; thus, we need consider only the third element of a political retaliation claim: whether "the protected activity was a substantial or motivating factor in the adverse employment action." Charleston, 926 F.3d at 989 (citation omitted).

Charleston asserts that a causal connection exists between the suspension and his campaign for sheriff, arguing that he had an unblemished employment record prior to announcing his run for sheriff; that other employees were treated differently than Charleston after committing similar transgressions; and that the temporal proximity between his run for sheriff and his termination demonstrates causation. First, the record simply contradicts any possible argument that Charleston had an unblemished employment record. Charleston's employment with the Polk County Sheriff's Department was marred with numerous disciplinary issues dating back to at least early 2012, all of which have been exhaustively detailed by this Court, the district court, the Civil Service Commission, and Iowa state courts through Charleston's numerous legal challenges.[5]

Second, with regards to Charleston's argument that other employees were treated differently than him, this argument is typically deployed in employment discrimination actions as a means to prove pretext, and "[t]he test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." E.E.O.C. v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003)

---

[5]See Charleston, 926 F.3d at 985; Charleston v. McCarthy, No. 14-CV-00164 2018 WL 11026361, at *2 (S.D. Iowa Mar. 30, 2018); Charleston, 175 F. Supp. 3d at 1115; Charleston v. Polk Cnty. Civil Serv. Comm'n, No. 18-0584, 2019 WL 3330627, at *1-3 (Iowa Ct. App. July 24, 2019); R. Doc. 79-2, at 39-47; R. Doc. 79-2, at 121-39; R. Doc. 79-2, at 150-64.

(citation omitted). Assuming, as the district court did, that Charleston's argument is applicable here, Charleston still fails to satisfy the dictates of this "rigorous" test because Charleston "has the burden of proving that he and the disparately treated [employees] were similarly situated in all relevant respects," id. at 775-76 (alteration in original) (citation omitted), and Charleston has failed to provide evidence of similarly situated employees being treated differently. Although he argues other employees did not receive the same treatment for similar behavior, the other officers he identifies were never disciplined for insubordination or failure to obey a direct order. The underlying differing bases for discipline is a significant enough disparity between Charleston and other officers to render them insufficiently similarly situated for the purposes of proving causation.

Finally, the temporal proximity alone between Charleston's 2016 run for sheriff and his 2017 suspension is insufficient to show causation. See Bassett v. City of Minneapolis, 211 F.3d 1097, 1105 (8th Cir. 2011) (explaining that temporal proximity alone may establish causation where the time lapse between the protected activity and the adverse employment action was two months or fewer), abrogated on other grounds by Torgerson, 643 F.3d at 1043, 1059. Without more evidence to support an inference of causation, the length of time between Charleston's 2016 campaign and his 2017 termination is simply insufficient to demonstrate causation. Because Charleston has failed to show causation, he has failed to meet his burden of showing a prima facie case of retaliation. The district court therefore did not err in granting summary judgment on Charleston's retaliation claim stemming from his two-day suspension.[6]

---

[6]Charleston also asserts that the district court applied the incorrect burden-shifting framework to his retaliation claim; however, as we conclude that Charleston fails to make a prima facie showing, we need not address this argument because "the burden-shifting framework is inapplicable until a plaintiff has successfully shown a prima facie case." Charleston, 926 F.3d at 991 n.3.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____